**SPRING BROOK ACRES WATER USERS ASSOCIATION, INC., a South Dakota Corporation and Dawn E. Mazzio, Plaintiffs and Appellees,**

v.

**Abner H. GEORGE, and Tom–Tom Communications, Inc., a South Dakota Corporation, Defendants and Appellants.**

No. 18017.

Supreme Court of South Dakota.

Considered on Briefs April 21, 1993.

Decided Sept. 8, 1993.

Rehearing Denied Oct. 15, 1993.

---

Donald R. Shultz and Steven J. Oberg of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiffs and appellees.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendants and appellants.

PER CURIAM.

Abner H. George (hereinafter "George") and Tom–Tom Communications, Inc. (hereinafter "Tom–Tom Communications")[1] appeal an Order and Judgment directing them to cease using certain real property as an FM radio transmission site. We affirm the trial court.

## FACTS

In 1972, Berry Corporation began developing a real estate subdivision known as Spring Brook Acres. Berry Corporation owned the land at the center of this dispute (hereinafter "Tract B"). Although, Berry Corporation developed covenants and restrictions for Spring Brook Acres, it did not impose any on Tract B (except to limit further subdivision to no more than seven sites).

On November 30, 1973, Dawn Mazzio and George purchased Tract B from Berry Corporation. On the same day, Berry Corporation, Mazzio, George, and the Spring Brook Acres Water Users Association executed an Easement and Right of Way Agreement (hereinafter "Easement"). The Easement contained a clause which states:

> No commercial business and/or business offices or businesses of any kind shall be operated or maintained upon Tract B, or any subdivision thereof.

Mazzio and George subsequently divided Tract B between themselves. George built a house on his portion of Tract B. Mazzio has not developed her property.

In 1985, George gave Tom–Tom Communications a reasonable assurance that it could build an FM radio communications tower (hereinafter "FM tower") and a small accessory building on his property in Tract B. Tom–Tom Communications pursued the appropriate federal approval and gave public notice of its intent to build a 500–foot tower on Tract B. Tom–Tom Communications eventually received approval from the Federal Communications Commission to proceed with its plans to build the FM tower.

In 1988, Tom–Tom Communications signed an agreement with George to purchase a portion of Tract B as a site for their FM tower. Tract B is zoned as a Suburban Residential District which permits "utility substations and communications towers" under conditional use permits. After litigation, Tom–Tom Communications obtained a conditional use permit for its FM tower.

Just before erection of the FM tower was started, Mazzio and Spring Brook Acres Water Users Association filed suit alleging violation of the covenant in the 1973 Easement. Tom–Tom Communications continued construction of the FM tower and the associated FM radio station went on the air in January, 1992. Tom–Tom Communications and George answered the complaint and denied the FM tower was in violation of the covenant in the 1973 Easement.

After a trial, Circuit Judge James Anderson entered findings of fact and conclusions of law in which he concluded the covenant in the Easement was ambiguous. After considering extrinsic evidence of the parties' intent, Judge Anderson concluded "the covenants and agreements of the parties clearly limited Tract B and Spring Brook Acres' properties to residential use." Judge Anderson issued a permanent injunction requiring Tom–Tom Communications to cease using George's property as a radio transmission tower site and requiring them to remove the FM tower. Judge Anderson also stayed that order pending appeal. George and Tom–Tom Communications appeal.

---

1. The following persons are officers, directors or at least 10% stockholders of Tom–Tom Communications, Inc.: Thomas J. Brokow, J. Thomas Kearns, Merideth A. Brokow, and Sandra M. Kearns.

## DECISION

The trial court found the covenant was ambiguous and then allowed the parties to produce extrinsic evidence of their intent. The trial court then concluded that the parties intended to prohibit such things as FM towers. We affirm the trial court's ultimate resolution of the case, but note that the covenant was not ambiguous and that resort to extrinsic evidence was not necessary. The trial court's ultimate resolution can and should have been reached by construing the intent of the parties as derived from within the four corners of the Easement.[2]

■ On appeal, this Court can read a contract itself without any presumption in favor of the trial court's determination. *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D. 1990). Whether a contract is ambiguous is a question of law. *Id.; American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990) A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct. *Baker*, 456 N.W.2d at 306; *American State Bank*, 458 N.W.2d at 809.

■ The trial judge reasoned that the term "business" was ambiguous because he didn't know whether an FM transmission tower was a "business." "Language is ambiguous when it is reasonably capable of being understood in more than one sense." *Newton v. Erickson*, 73 S.D. 228, 236, 41 N.W.2d 545, 550 (1950). The term "business" has a plain and ordinary meaning and that meaning can be defined. "Business" is defined in Black's Law Dictionary as:

> Employment, occupation, profession, or commercial activity engaged in for gain or livelihood. Activity or enterprise for gain, benefit, advantage or livelihood. Enterprise in which a person engaged shows willingness to invest time and capital on future outcome. That which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest or for livelihood or profit. (citations omitted).

Black's Law Dictionary, 179 (5th ed. 1979). South Dakota's statutes define "business" in a similar manner. Both SDCL 10–45–1(2) (concerning retail sales and service tax) and 10–46–1(1) (concerning use tax) define business as "any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit or advantage, either direct or indirect." *See also, Ward Co., Inc. v. Department of Revenue*, 284 N.W.2d 883 (S.D.1979). There is no indication in the Easement that the parties are using the term "business" for any other purpose.

■ The question in this case is whether an FM tower is a "business." When reading the Easement and the covenant contained therein, the intent of the parties is evident. They intended that "No commercial business and/or business offices or business of any kind shall be operated or maintained upon Tract B, or any subdivision thereof." "Business" is a very broad term and clearly the parties intended to prohibit commercial activity on the property. The FM radio station cannot operate without the FM transmission tower. Therefore, the operation and maintenance of the FM tower constitutes commercial activity. This is true despite the 17 reasons George and Tom–Tom Communications set forth to prove it is not commercial activity. Those items relate to the *extent of the activity* on the property. Those items do not affect the *nature* of the commercial activity.

George and Tom–Tom Communications urge this Court to apply a rule of strict construction to covenants restricting the use of land. We conclude that it is not necessary for us to address that matter in this case. We have concluded that the parties clearly intended to prohibit commercial activity on the property. Whether or not a strict rule of construction is applied, that intent will remain the same. A five-hundred-foot FM transmission tower is clearly a violation of

2. The Plain Meaning Rule states that if a term "appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." Calimari and Perillo, Contracts, § 3–10, p. 166–67 (3rd ed. 1987).

the parties' intent as expressed in the covenant of the 1973 easement.

The trial court is affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.