2002 SD 14

**FULL HOUSE, INC., Plaintiff and Appellant,**

v.

**Kermit G. STELL, Marlene J. Stell, and Melodee S. Stell, Defendants,**

v.

**B.R.I., Inc., Intervenor and Appellee.**

Nos. 21736, 21761.

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Jan. 30, 2002.

Michael V. Wheeler of Demersseman Jensen, Rapid City, Attorney for plaintiff and appellant.

Samuel D. Kerr of Banks Johnson Colbath & Kerr, Rapid City, Attorney for intervenor and appellee.

FLEMMER, Circuit Judge.

[¶ 1.] This is an appeal in a quiet title action concerning the existence and use of an easement for an advertising billboard sign in Deadwood, South Dakota. The real property on which the easement is located belongs to the plaintiff and appellant, Full House, Inc. (Full House). The sign on the easement is for a Best Western Motel owned by B.R.I. Inc. (BRI), the intervenor below and the appellee here. The original defendants, Kermit and Mar-lene Stell and Melodee Nelson (Stell) defaulted in the circuit court and are not parties to this appeal.

[¶ 2.] Summary judgment was granted to BRI. The circuit court found that no material issue of fact exists as to the claims set forth in the record and that BRI is entitled to judgment as a matter of law. Full House appeals. We affirm.

## STATEMENT OF FACTS

[¶ 3.] At one time, Stell owned the two pieces of property at issue: the Best Western Hickok House (Best Western) and what was the Porter Lumber Company (Main Street). On the Main Street property, Stell erected a large billboard advertising the Best Western.

[¶ 4.] In April 1990, Stell sold the Main Street property to William P. Martindale by warranty deed, taking back a 180 day redemption mortgage. At the time of the sale, Stell executed an easement allowing a Best Western billboard sign on the Main Street property in perpetuity. The billboard sign located on the easement is limited to advertising the Best Western Motel and its associated restaurants. Both the one hundred eighty-day redemption mortgage and the easement were properly recorded on the same day.

[¶ 5.] In December 1990, Stell decided to sell the Best Western. Stell entered into an offer and agreement to purchase with BRI. This transaction was completed on March 29, 1991. The parties also executed a promissory note, security agreement and bill of sale. All rights, title and interest in the Best Western were transferred to BRI via warranty deed and quitclaim deed. Contained in the purchase agreement were provisions requiring BRI to keep the same number of Best Western advertising signs. BRI also purchased a number of signs from Stell and BRI was paying rent for certain billboards still owned by Stell.

Stell believed that he still owned the Main Street sign and that it was included in the rental arrangement.[1] Stell defaulted in the circuit court and now claims no ownership of the sign located on the Main Street property.

[¶ 6.] In August 1991, Stell foreclosed on Martindale who was in default on his mortgage. A judgment and decree of foreclosure was entered on January 27, 1992. The Main Street property was purchased at auction by Full House. Full House uses this property as a parking lot for its hotel, a local competitor of the Best Western.

[¶ 7.] In 1999, Full House brought this action to quiet title to the sign easement on the Main Street property. Both parties moved for summary judgment. The motion was argued on June 20, 2000 and, on September 7, the circuit court entered judgment for BRI. The memorandum decision by the circuit court states that: "the easement was appurtenant to the Charles Street/Best Western property and passed from Stell to BRI when BRI purchased that property; the easement burdened the Main Street property, and . . . Full House took the Main Street property subject to that easement."

## ISSUES ON APPEAL:

[¶ 8.] Full House raises one issue on appeal:

**Did the circuit court err in granting summary judgment in favor of BRI?**

[¶ 9.] BRI raises one issue as well:

**Did the circuit court err in denying BRI's application for taxation of costs?**

---

1. Testimony was given that BRI was paying rent for the sign on the Main Street property not because it believed it was owed to Stell, but because it did not want to foster any

## STANDARD OF REVIEW

[¶ 10.] SDCL 15-6-56(c) provides that summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. It is settled law that this Court will affirm a summary judgment " 'only when there are no genuine issues of material fact and the legal questions have been correctly decided.' " *Kimball Investment Land, Ltd. v. Chmela*, 2000 SD 6, ¶ 7, 604 N.W.2d 289, 292 (quoting *Mattson v. Rachetto*, 1999 SD 51, ¶ 8, 591 N.W.2d 814, 816–17).

> We interpret a deed as we would a contract. SDCL 43–4–13. Contract interpretation is a question of law. *See Harksen v. Peska*, 1998 SD 70, ¶ 11, 581 N.W.2d 170, 173 (citing *Spring Brook Acres Water Users Ass'n, Inc. v. George*, 505 N.W.2d 778, 780 (S.D.1993))(further citations omitted). Whether a contract is ambiguous is also a question of law subject to de novo review. *Id.* (Citations omitted).

In re Estate of Rosenbaum, 2001 SD 44, ¶ 6, 624 N.W.2d 821, 824.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 11.] **Did the circuit court err in granting summary judgment in favor of BRI?**

[¶ 12.] There are two inquiries under this issue: first, when BRI purchased the Best Western from Stell, did the purchase include the easement over the Main Street property; and, second, when Full House purchased the Main Street property at auction, was the property subject to the easement attached to the property?

---

antagonism with Stell. BRI believed that paying the yearly rent for the sign was easier than litigation with Stell.

## A.

■ [¶ 13.] The question of whether BRI's purchase of the Best Western included the sign easement is a question of law requiring the interpretation of the purchase agreements and contracts between BRI and Stell. The offer and agreement to purchase executed in December 1990 between Stell as seller and BRI as buyer clearly indicated: "Other provisions purchased by Buyers at cost: All highway sign leases to be transferred to new Buyers . . . ." In addition, the 1991 mortgage of the Best Western referenced purchase of "all [property] together with *all rights and easements pertinent to the property,* all abstracts of title and title insurance thereof and insurance thereon, . . . appurtenances and permits of and from the property and all *collateral as set forth in the Promissory Note and Security Agreement* referred to hereafter . . . ." (emphasis added).

■ [¶ 14.] The promissory note and security agreement between BRI and Stell listed the same items as collateral and specifically included "signs." It also listed items associated with the Best Western that were to be retained by Stell and that list did *not* include the easement on the Main Street property. Most importantly, the note directed BRI to continue to maintain the number of signs and billboards then in existence. As part of the note, Stell specifically set the rental arrangement for other Best Western signs not included in the sale as easements. For example, BRI was to rent the sign at the "Chicken Ranch" (another property of Stell) for the amount of $600 per year. This is notable because there was no mention in the note of Stell still owning the easement on the Main Street property and requesting rent for that sign. If Stell

wished to maintain ownership of that easement at the time of the sale to BRI, that term could easily have been included in the contract. Absent some ambiguity in the contract terms, the plain and ordinary meaning of these written documents is controlling. *See Lakes' Byron Store v. Auto Owners Ins.,* 1999 SD 25, ¶ 7, 589 N.W.2d 608, 609.

■ [¶ 15.] While it is true that the bill of sale and the mortgage agreement did not specifically list the easement located on the Main Street property, easements were mentioned in a general sense. All easements created for a specific piece of property run with the ownership of that property. South Dakota law is clear on this issue. SDCL 43–25–30 states:

A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed.

[¶ 16.] In *Nelson v. Gregory County,* 323 N.W.2d 139 (S.D.1982), this Court ruled that even though the transferring documents (deeds, bill of sale) did not specifically reference the easements, the easements were nonetheless transferred as appurtenant to the land.[2] As set forth in *Nelson,* 323 N.W.2d at 142:

That neither the deed to appellee nor the deed to appellants from [the seller] mentions transfer of the easement rights so reserved by [the seller] in the 1957 agreement does not bar appellee's right to the easement. Appellants do not con-

---

**2.** SDCL 43–1–5 provides in pertinent part that "[a] thing is deemed to be incidental or

appurtenant to land when it is by right used with the land for its benefit[.]"

tend that [the seller] lacked such rights. A transfer from [the seller] to appellee passed all easements attached thereto by operation of SDCL 43–25–30, even though the deed of conveyance did not specifically mention the grant of the easement. *Homes Development Company v. Simmons,* 75 S.D. 575, 70 N.W.2d 527 (1955).

■ [¶ 17.] "Once the parameters of an easement are established it runs with the land, passing to whomever buys the property for the benefit of the easement holder." *Peterson v. Beck,* 537 N.W.2d 375, 378 (S.D.1995). The Main Street easement was created for the sole benefit of the Best Western.[3] BRI, as purchaser of the Best Western, is also the owner of the easement.

## B.

[¶ 18.] With regard to the question of whether Full House purchased the Main Street property subject to the sign easement, Full House argues that, when Stell foreclosed on the property, the property was returned to its original state as it existed before Martindale's purchase and Stell's retention of the easement. According to Full House, it follows that there was no longer any sign easement attached to the property by the time of its purchase.

■ [¶ 19.] The Full House complaint alleges that the mortgage between Martindale and Stell was granted prior to Stell's recording of the easement. The circuit court concluded that these two acts occurred at the same time; that Stell sold the Main Street property to Martindale and, at the same time, retained an easement for the Best Western. Full House

points out that BRI, in its initial answer to the complaint, agreed with Full House concerning the timing of filing of the mortgage and easement. Although BRI made a motion to amend the answer, the circuit court did not specifically grant leave to amend the pleadings. Full House now argues that the circuit court and this Court must follow BRI's erroneous admission. However, the circuit court did not take this admission into account when making its ruling, therefore giving leave to BRI to amend the pleadings. The general rule is that a motion to amend should be freely granted unless it will somehow prejudice the adverse party. *See* SDCL 15–6–15(a); *Kjerstad v. Ravellette Publications, Inc.,* 517 N.W.2d 419, 423 (S.D.1994). The circuit court most appropriately did not place any reliance on BRI's flawed pleading.

[¶ 20.] Full House further argues that, due to the foreclosure, it believed it was purchasing a property free and clear of any easements. However, SDCL 21–47–24 clearly provides in part that:

> At the expiration of the time for the redemption of such mortgaged premises, if the same is not redeemed, the person or officer making the sale ... must make to the purchaser or purchasers ... a deed ... to such premises which shall vest in the purchaser, or other party entitled thereto, the *same estate that was vested in the mortgagor* at the time of the execution and delivery of the mortgage[.] (emphasis added).

At the time of the execution of the mortgage, Martindale purchased the Main Street property subject to the easement.

\* \* \*

---

3. SDCL 43–13–2(6) provides:

> The following land burdens or servitudes upon land may be attached to other land as incidents or appurtenances, and are called easements:
>
> (6) The right of transacting business upon land[.]
>
> Advertising is a business transaction and is a legal easement.

Martindale never had title to the property without the easement. Therefore, as a matter of law, the title transferred at the foreclosure can be no better than what Martindale had at the time of the execution of the mortgage.

[¶ 21.] In conclusion, the owner of the Best Western, BRI, also owns the easement located on the Main Street property which is owned by Full House. The circuit court's summary judgment for BRI is affirmed.

## ISSUE TWO

[¶ 22.] **Did the circuit court err in denying BRI's application for taxation of costs?**

■ [¶ 23.] SDCL 15–6–54(d) [4] and 15–17–37 [5] lay out the procedure for the prevailing party in a civil action to recover expenditures incurred in the gathering and discovery of evidence. In its memorandum decision of September 7, the circuit court ruled that each party should pay their own attorney fees and costs. The prevailing party is allowed thirty days to file an application for costs and disbursements following the entry of judgment. SDCL 15–6–54(d).

■ [¶ 24.] BRI made an application in a timely manner for taxation of costs and Full House objected. Both sides fully briefed the issue and the circuit court denied BRI's application on October 12. By notice of review, BRI now seeks review of the denial. The issue is reviewed under an abuse of discretion standard. *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900, 906 (S.D.1994) (citing *Dacy v. Gors*, 471 N.W.2d 576, 580 (S.D.1991)). "'Abuse of discretion' is discretion not justified by,

4. SDCL 15–6–54(d) provides:

Costs and disbursements shall be allowed as provided by statute. If a party wishes to have disbursements and costs of the action assessed, that party must file an application for taxation of costs, and a certificate of service, with the clerk of court. The application shall include a statement in detail of the costs and disbursements claimed and shall be verified by affidavit. The party preparing the application shall forthwith serve a true copy of the application and the certificate of service upon all other parties. A party who objects to any part of the application shall serve and file his objections with the clerk of court in writing within ten days of the service of the application on him or he will be deemed to have agreed to the taxation of the costs and disbursements proposed. The written objections must be accompanied by a notice of hearing thereon and shall set forth in concise language the reasons why the costs should not be allowed. Upon receipt of such written objections and the notice of hearing, the clerk shall file the same and forward copies thereof, together with a copy of the application, to the court. The decision rendered at the hearing shall be filed as a written order with the clerk, directing that the approved amount of costs and disbursements be inserted in the judgment and docketed.

If no written objection to the taxation of costs is filed within ten days of service, the clerk shall tax the costs and disbursements as set forth on the application, insert the amount in the judgment, and docket it.

Costs and disbursements under this section shall be waived if proper application is not made within thirty days of the entry of the judgment. For good cause shown, the court may extend the time.

5. SDCL 15–17–37 provides:

The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15–6–54(d).

and clearly against, reason and evidence."
*Id.*

[¶ 25.] Under SDCL 15–17–52, the circuit court may, in its discretion, limit disbursements to either party. As this Court recently ruled in *Culhane v. Michels*, 2000 SD 101, ¶ 33, 615 N.W.2d 580, 590:

> [A] court is not required to grant recovery for disbursements simply because a party has achieved the status of a prevailing party. While SDCL 15–17–37 grants no discretion, SDCL 15–17–52 allows a court to "limit the taxation of disbursements in the interests of justice." This statute grants discretion to deny recovery of disbursements even though SDCL 15–17–37 does not. (quoting *Michlitsch v. Meyer*, 1999 SD 69, 594 N.W.2d 731, 734). (internal citations omitted).

In this case, the circuit court apparently disallowed disbursements in the interests of justice. The court reviewed the application for taxation of costs as well as the objections to the application and made a decision based upon its review of those arguments. We find no abuse of discretion by the circuit court in this matter. The denial of the application for taxation of costs and disbursements is affirmed.

[¶ 26.] GILBERTSON, and KONENKAMP, JJ., concur. MILLER, Retired Chief Justice, was a member of the Court at the time this action was submitted but was disqualified and did not participate.

[¶ 27.] SABERS, Acting Chief Justice, dissents.

[¶ 28.] FLEMMER, Circuit Judge, for AMUNDSON, Justice, disqualified.

SABERS, Acting Chief Justice (dissenting).

[¶ 29.] I dissent on Issue 1 because there are clearly genuine issues of material fact. BRI claims that it owns both the easement and sign at issue. BRI, however, stated that it was paying rent to Stell for the use of the easement and the sign on the Main Street property. It is unclear why BRI would pay unnecessary rent for a billboard if it believed it had an easement in the property. Paying rent for an easement is inconsistent with a belief in outright ownership in the easement. This question alone presents a genuine issue of material fact.

[¶ 30.] Moreover, there is a genuine issue of material fact regarding the agreement between BRI and Stell for the sale of the Best Western. BRI acknowledges that the sale documents did not reference the easement on the Main Street property. Again, such an acknowledgement may be inconsistent with a belief in outright ownership. Because of these questions, this case is inappropriate for summary judgment.

[¶ 31.] Even if the majority opinion is correct in its analysis of Issue 1, it reaches an incorrect result on Issue 2. The majority opinion concludes that the circuit court did not err in denying BRI's application for taxation of costs. It states that the circuit court did not abuse its discretion by disallowing an award for costs and disbursements to BRI "in the interests of justice." The majority opinion views an award of costs and disbursements as discretionary. The governing statute, however, provides that "[c]osts and disbursements *shall* be allowed as provided by statute." SDCL 15–6–54(d) (emphasis added). The term "shall" does not allow for discretion. This Court has repeatedly stated that: "When 'shall' is the operative verb in a statute, it is given 'obligatory or mandatory' meaning." *Fritz v. Howard Township*, 1997 SD 122, ¶ 15, 570 N.W.2d 240, 242 (citing In re Groseth Int'l, Inc.,

442 N.W.2d 229, 231–32 (S.D.1989)). *See also* SDCL 2–14–2.1 (providing that "[a]s used in the South Dakota Codified Laws to direct any action, the term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed"). Therefore, there is no allowance for discretion and costs and disbursements should be awarded.