# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00649-CV

**Farmers Insurance Exchange; Truck Insurance Exchange; Fire Insurance Exchange; Mid-Century Insurance Company; Mid-Century Insurance Company of Texas; Farmers New World Life Insurance Company; Farmers Texas County Mutual Insurance Company; Texas Farmers Insurance Company; and Farmers Group, Inc., Appellants**

**v.**

**Michael Leonard and Michael Sawyer on Behalf of Themselves and all Others Similarly Situated, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN-001634, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Mid-Century Insurance Company of Texas, Farmers New World Life Insurance Company, Farmers Texas County Mutual Insurance Company, Texas Farmers Insurance Company, and Farmers Group, Inc. (collectively AFarmers@), bring this interlocutory appeal challenging the trial court=s order certifying a class action. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(3) (West Supp. 2002). By four issues, Farmers contends that the trial court erred in certifying the class action brought by appellees, Michael Leonard and Michael Sawyer. Farmers contends that the class does not meet the requirements for class certification under rule 42 of the Texas Rules of Civil Procedure, and urges reversal and decertification. We will affirm the trial court=s order.

## BACKGROUND

This case involves a number of essentially unilateral bonus award contracts that Farmers gives its agents each year to reward them for meeting certain profitability and sales requirements. Although Farmers offers a number of award programs, only four distinct bonus programs are implicated in this dispute. The four bonus contracts, and the years in which Leonard and Sawyer claim Farmers breached the agreements, are the Underwriting Contract Value Bonus for 1995-1999, the Agency Profitability Bonus for 1995-1999, the Auto Retention Bonus for 1999, and the Life Performance Bonus for 1996-1999. Farmers sent these bonus contracts to 13,000 agents in twenty-nine states.

Because these contracts may change, Farmers explains the bonus programs in annual Achievement Award Brochures, Field Bulletins, and the Farmers Agent Guide. These written explanations contain the rules, eligibility criteria, and qualification requirements for each bonus award available that year. Each bonus is calculated by Farmers, based on an individual agent=s sales and profitability. Accordingly, the written explanations for the bonus contracts notify the agents that A[p]roduction qualifications are based on official Company production records for the qualifying period for each award.@ Farmers also furnishes its agents with a copy of their individual production records so that they will be able to monitor their individual sales, production, and profitability, as determined by Farmers. Leonard and Sawyer claim that Farmers uniformly breached the four bonus contracts at issue by improperly calculating and awarding the bonuses due to the class members. Accordingly, Leonard and Sawyer filed this suit as a putative class action.[1]

---

[1] Although each of the four bonuses involve different methods of calculation in order to determine

an agent=s eligibility and the size of the bonus awarded, an explanation of the intricacies of each bonus is unnecessary for purposes of this opinion.

After a six-day certification hearing, the trial court certified the class. Farmers appeals that decision and raises the following four issues for our consideration: (1) the trial court erred in determining that California=s substantive law should apply in this case; (2) the decision to allow Leonard and Sawyer to represent multiple subclasses was an abuse of discretion; (3) the determination that Leonard and Sawyer are adequate representatives typical of the class was in error and amounts to an abuse of discretion; and (4) the requirements of rule 42(b)(4) have not been met because individual issues do not predominate, the class action is not superior to individual actions, and the proposed trial plan is unworkable.

**STANDARD OF REVIEW**

In a class action, the trial court is charged with the duty of actively policing the proceedings and guarding the class interests. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954 (Tex. 1995). Therefore, the trial court is afforded broad discretion in defining the class and determining whether to grant or deny a class certification. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 406 (Tex. 2000). On appeal, our review is strictly limited to determining whether the trial court abused its discretion in ordering class certification. *See Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 740 (Tex. App.CAustin 1998, no pet.); *Vinson v. Texas Commerce Bank-Houston, N.A.*, 880 S.W.2d 820, 823 (Tex. App.CDallas 1994, no writ). An appellate court must not substitute its judgment for that of the trial court. *Tana Oil*, 978 S.W.2d at 740. Even if a trial court determines an issue differently than would an appellate court, the ruling does not necessarily constitute an abuse of discretion. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). In determining whether a matter should be litigated

**4**

as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *Tana Oil*, 978 S.W.2d at 740.

In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with the evidence presented at the hearing. *Employers Cas. Co. v. Texas Ass=n of Sch. Bds. Workers=Comp. Self-Ins. Fund*, 886 S.W.2d 470, 474 (Tex. App.CAustin 1994, writ dism=d w.o.j.). The evidence on which a trial court bases its certification ruling need not be in a form necessary to be admissible at trial. *See Texas Commerce Bank Nat=l Ass=n v. Wood*, 994 S.W.2d 796, 801 (Tex. App.CCorpus Christi 1999, pet. dism=d w.o.j.); *Microsoft Corp. v. Manning*, 914 S.W.2d 602, 615 (Tex. App.CTexarkana 1995, writ dism=d). We view the evidence in the light most favorable to the trial court=s action, entertaining every presumption that favors its judgment. *Vinson*, 880 S.W.2d at 823.

Although the standard of review, generally, for class certification decisions is an abuse of discretion, because Farmers challenges the trial court=s choice of law determination, we must apply a different standard for that discrete issue. The determination of which state=s law applies is a question of law for the court to decide. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Therefore, we must review the trial court=s decision to apply California law in this case *de novo. See Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996). But determining the state contacts to be considered by the court in making this legal determination involves a factual inquiry. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000). Texas courts apply the Restatement=s Amost significant

relationship@test to decide choice of law issues. *Torrington*, 46 S.W.3d at 848; Restatement (Second) of Conflict of Laws ' 6 (1971).

Our review of the record in this case supports the trial court=s decision to apply California law and our conclusion that the trial court did not abuse its discretion in certifying the class. The trial court conducted a thorough certification hearing in which it went well beyond the parties= pleadings in order to examine the claims, defenses, relevant facts, and applicable substantive law of this case to make a meaningful determination of the certification issues. The record before us indicates that the trial court conducted a rigorous analysis of all issues presented and arrived at a reasoned decision in certifying the class.

### REQUIREMENTS OF CLASS CERTIFICATION

Texas rule 42, governing class actions, is patterned after its federal counterpart. Consequently, federal decisions and authorities interpreting current federal class action requirements are persuasive authority. *Southwestern Ref. Co., Inc. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000). The class action serves as a mechanism to eliminate or reduce the threat of repetitive litigation, prevent inconsistent resolution of similar cases, and provide a means of redress for individual claims that are too small to make independent actions economically viable. *See Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452 (Tex. 2000). The principal purpose of the class action device is the efficiency and economy of litigation. *See id.* (discussing origins and general design of class action device). Thus, when properly used, a class action saves the court=s and the parties= resources by allowing class-wide issues to be tried in an economical fashion. *See id.* at 452 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1981)).

**6**

All class actions must satisfy the following four threshold requirements: (1) numerosityCthe class is so numerous that joinder of all members is impracticable, (2) commonalityCthere are questions of law or fact common to the class, (3) typicalityCthe claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) adequacy of representationCthe representative parties will fairly and adequately protect the interests of the class. *See* Tex. R. Civ. P. 42(a); *Bernal*, 22 S.W.3d at 433. Additionally, class actions must satisfy at least one of four subdivisions of rule 42(b). Here, the trial court certified the class under rule 42(b)(4), which requires that common questions of law or fact common to the class predominate over questions affecting only individual members and that class treatment be superior to other available methods for the fair and efficient adjudication of the controversy. Tex. R. Civ. P. 42(b)(4); *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Bernal*, 22 S.W.3d at 433.

## DISCUSSION

*Choice of Law*

In its first issue, Farmers contends that the trial court erred in determining that California=s substantive law should apply to the claims of all class members. Farmers argues that, under a proper choice of law analysis, each agent=s claim should be decided under the law of the state in which that agent worked and resided. In an interesting juxtaposition, Farmers further argues that the application of California law to class members from other states is unfair to those class members because they would have a better chance of success under the law of their home states. Specifically, Farmers argues that California law, more so than the law of other states, allows for the introduction of extrinsic evidence in contract disputes that could aid

7

Farmers in undermining the class members= claims. Farmers contends that a proper choice of law analysis requires the application of the law of all twenty-nine states in which the class members live. It follows, according to Farmers, that the class must be decertified because the individual issues would predominate and a class action would no longer be the superior method of adjudicating this dispute. We disagree. Applying the relevant sections of the Restatement of Conflict of Laws to the facts of this dispute leads us to the conclusion that the trial court was correct in determining the proper substantive law to be applied in this case is that of California.

We begin our choice of law analysis with the Restatement=s Amost significant relationship@ test. *See Torrington*, 46 S.W.3d at 848; Restatement (Second) of Conflict of Laws ' 6 (1971). That section requires us to apply the following factors to the facts of this case:

    (a)   the needs of the interstate and international systems,

    (b)   the relevant policies of the forum,

    (c)   the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    (d)   the protection of justified expectations,

    (e)   the basic policies underlying the particular field of law,

    (f)   certainty, predictability and uniformity of result, and

    (g)   ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws ' 6(2).

The basic principles of section 6 favor the application of California law. Because all drafting, mailing, calculating, and awarding of bonuses originated from California, it is reasonable to assume that Farmers and its agents expected that California law would control any disputes that arose between the parties concerning the bonuses. *See id.* ' 6(2)(d) (protection of justified expectations). No other state involved in this dispute has equal interests to California in having its law applied. While each agent=s home state has a great interest in having its law applied to disputes arising within its borders, the only actions in dispute here occurred in California. While the agents sold insurance policies in their home states, the dispute here concerns the calculation of bonuses which occurred only in California. *See id.* ' 6(2)(c) (relative interests of states in determining particular issue). Also, with virtually all activity involving the bonus contracts having originated in California, and the relative uniformity in the various states= laws governing this dispute, the ease of determination and application factor favors California law. *See id.* ' 6(2)(g) (ease in determination and application of law to be applied). Finally, in a class action such as this one, where the class members reside in twenty-nine states but all of the defendants= alleged breaches of contract occurred in California, the desire for certainty, predictability, and uniformity of result lean heavily toward application of California law. *See id.* ' 6(2)(f) (certainty, predictability, and uniformity of result).

However, our inquiry does not end with section 6. Because these unilateral contracts did not have choice of law provisions, we must also examine the factors listed in section 188. *See* Restatement (Second) of Conflict of Laws ' 188 (1971). Section 188 provides the following:

> (2) In the absence of an effective choice of law by the parties . . ., the contacts to be taken into account in applying the principles of ' 6 to determine the law applicable to an issue include:

**9**

(a)   the place of contracting,

(b)   the place of negotiation of the contract,
(c)   the place of performance,

(d)   the location of the subject matter of the contract, and

(e)   the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* ' 188(2).

Although not all of the appellants have their principal place of business in California, the most integral actor with regard to the class members= allegations, Farmers Group, Inc., does maintain its primary office in California.[2] Farmers Group, Inc. is the only appellant that is not an insurance company. However, Farmers Group, Inc. acts as the agent for Farmers in administering the bonuses that form the crux of this case. Farmers Group, Inc. drafted the bonus contracts, collected the data, determined how that data

---

[2] Of the nine appellants, five have their principal place of business in California. Those five are Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, and Farmers Group, Inc. Three others, Mid-Century Insurance Company of Texas, Farmers Texas County Mutual Insurance Company, and Farmers Texas Insurance Company, maintain their principal place of business in Texas, and a fourth, Farmers New World Life Insurance Company, maintains its principal place of business in Washington.

would be applied in the calculations, and issued the bonuses to Farmers=agents. Furthermore, although the class members reside in twenty-nine states, a majority live in California. Based on these facts, the trial court found that California had the most significant relationship to the bonus contracts at issue and the parties to the lawsuit.

Taking into account the requirements of section 188, we conclude that the trial court was correct in ruling that California law applied to the claims of the class. Particularly relevant is the place of performance of the contract. *See id.* ' 188(2)(c). Farmers argues that the place of performance is the place where the agents performed the functions that qualified them for the bonuses in questionCin other words, the place of performance is where the insurance agents sold the insurance products. Farmers= argument overlooks the nature of the bonus contracts at issue. The relevant performance for the purposes of this dispute is that of Farmers. Once these unilateral bonus contracts were formed, Farmers had an obligation to accurately calculate and remit bonus payments to their agents.[3] The calculation of these bonuses, the central issue in this case, was performed by Farmers in California. In the context of these bonus contracts, the actions of the agents in selling and maintaining various insurance products merely

---

[3] While it is true that the acceptance, and thus the formation, of these unilateral bonus contracts was triggered by the agents selling a certain amount of insurance policies, the dispute between the parties does not focus on contract formation. All issues in this case revolve around the breach of contract which allegedly occurred during Farmers= performance of its obligations under these contracts.

provides the measuring stick that Farmers uses in performing its obligations under the contract. Thus, the relevant place of performance of these bonus award contracts was California.

The remaining factors listed in section 188 also point to the application of California law. Because these bonus award contracts were drafted solely by Farmers in California and then sent from California to the class members without the possibility for further input from those class members, the place of contracting factor indicates that California law should apply. *See id.* ' 188(2)(a) (place of contracting). The location of the subject matter of the contracts is also California because Farmers maintained all official company production records for the calculation of the bonuses in California. *See id.* ' 188(2)(d) (location of subject matter of contract). Finally, with regard to the relative importance of these particular contracts, the party solely responsible for performance, Farmers Group, Inc., has its principal place of business in California. *See id.* ' 188(2)(e) (place of business of parties).

Farmers attempts to overcome the strong indication from sections 6 and 188 that California law should apply by arguing that section 196 of the Restatement, the section governing service contracts, trumps the other sections. Section 196 provides the following:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in ' 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws ' 196 (1971).

**12**

Because the agents provided the service of selling insurance products in their home states, Farmers contends that the contracts in question should be governed by the law of the states in which those sales took place. We disagree. We have already discussed the place of performance for these bonus contracts in our discussion of section 188, and we conclude that the proper law to be applied in this case is that of California.

Although our examination of the relevant sections of the Restatement has brought us to the conclusion that the trial court properly determined that California law should apply to the class members= claims, Farmers urges that the differences in the parol evidence rules between California and the other twenty-eight jurisdictions involved in this case require the application of each states= substantive law in order to protect the absent class members= interests. The essence of Farmers= argument is as follows: if the law of Farmers= home state of California applies to the claims raised by the class, class members from other states will suffer because the more liberal California law on parol evidence will allow Farmers to defeat the claims of the class. Therefore, rather than using the liberal rules of its own state=s law against the class, Farmers urges this Court to protect the interests of the absent class members and decertify the class, thus allowing each class member a better opportunity to successfully bring an individual breach of contract claim against Farmers in that class member=s home jurisdiction.

Ignoring the irony of Farmers= position, we are unpersuaded by this argument concerning the differences in the twenty-nine states= parol evidence rules. As applied to this case, the parol evidence rules of all twenty-nine states, including California, function in a substantially similar manner and would allow extrinsic evidence to be admitted. Farmers correctly asserts that California=s parol evidence rule does not

restrict contract disputes to the four corners of an unambiguous document. Cal. Civ. Proc. Code ' 1856 (2001) (extrinsic evidence admissible unless meant to contradict writing by showing prior agreement or contemporaneous oral agreement). However, California=s rule only differs from the parol evidence rules of the other twenty-eight states when the contracts in question are unambiguous because those jurisdictions limit the examination of unambiguous contracts to the four corners of the documents. *See, e.g.*, *Butts v. Lawrence*, 919 P.2d 363, 367 (Kan. 1996); *Ruble v. Reich*, 611 N.W.2d 844, 849-50 (Neb. 2000); *Geo. B. Smith Chem. Works, Inc. v. Simon*, 555 P.2d 216, 217 (Nev. 1976); *Spring Brook Acres Water Users Assoc. v. George*, 505 N.W.2d 778, 780 (S.D. 1993); *Wolter v. Equitable Res. Energy Co.*, 979 P.2d 948, 951 (Wy. 1999).

Although both Farmers and the class members argue that the contracts in question are unambiguous, they dispute which documents constitute the contracts. Thus, a question of intent concerning contract formation is raised. A disagreement as to what documents form a contract is a latent ambiguity that allows for the admission of parol evidence. *See, e.g.*, *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282-83 (Tex. 1996) (AA latent ambiguity exists when a contract is unambiguous on its face, but fails by reason of some collateral matter when it is applied to the subject matter with which it deals.@); *Wolter*, 979 P.2d at 952 (existence of latent ambiguity allows parties to explain intent with extrinsic evidence). Therefore, regardless of which state=s law is applied to this case, the rules governing the admission of extrinsic evidence remain constant.

Finally, while we remain steadfast in our decision that California=s substantive law should apply in this case, we are equally convinced that Farmers=argument concerning the parol evidence rule does

**14**

not result in the need to decertify the class.[4]  Because the same rules governing parol evidence apply to every state once a latent ambiguity is found in the contract, a decision to apply the law of any of the twenty-nine states involved would result in the same effect on the parties.  We overrule Farmers= first issue.

*Representation of Absent Class Members*

Farmers= second and third issues challenge the trial court=s ruling that Leonard and Sawyer can protect the interests, and serve as adequate representatives, of every class member.  The trial court=s order has divided the class into four subclasses.  The definitions for each subclass correspond to the type of bonus contract the agents in that subclass were eligible to receive.  Thus, we will refer to the subclasses as (1) the Agency Profitability subclass, (2) the Underwriting Contract Value subclass, (3) the Auto Retention subclass, and (4) the Life Performance subclass.  The trial court ordered that both Leonard and Sawyer would serve as the representatives for the Agency Profitability, Underwriting Contract Value, and Life Performance subclasses, but only Sawyer would represent the Auto Retention subclass.  In its second issue, Farmers contends that, initially, the trial court abused its discretion because a conflict exists within the Life Performance subclass and, secondly, another conflict may be created by allowing Leonard and Sawyer to represent multiple subclasses with possibly divergent interests.  The latter argument relies on the assumption that the subclasses will compete with one another to maximize each subclass=s share of the available funds if

---

[4]  Of course, if class members feel disadvantaged by applying the law of a foreign state to their claims, they may opt out of this class action litigation and pursue an individual breach of contract claim individually in their home state.

the parties settle the lawsuit. In its third issue, Farmers challenges Leonard=s and Sawyer=s credibility and personal integrity. Absent a proper finding that these representatives possess these two qualities, Farmers contends it was error for the trial court to allow Leonard and Sawyer to represent the various subclasses.

Adequacy of representation is a question of fact addressed to the sound discretion of the trial court, and the trial court does not abuse its discretion in finding adequacy if there is evidence to support the finding. *See Glassell v. Ellis*, 956 S.W.2d 676, 681-82 (Tex. App.CTexarkana 1997, pet. dism=d w.o.j.). Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy. *Nissan Motor Co., Ltd. v. Fry*, 27 S.W.3d 573, 583 (Tex. App.CCorpus Christi 2000, pet. denied). Speculative allegations concerning potential conflicts are insufficient to show that the trial court abused its discretion in finding the representatives to be adequate. *Employers Cas.*, 886 S.W.2d at 476.

At the certification hearing, Dean Edward F. Sherman testified for the plaintiff class members that dividing the class into four proposed subclasses would provide superior means for trying the breach of contract issues in this case. On cross-examination, Farmers attempted to elicit testimony from Sherman showing a potential conflict within the Life Performance subclass. However, Sherman=s testimony established that no conflict existed because, by definition, the subclass excluded agents with a potential conflict of interest. The trial court=s certification order includes the class definition for the Life Performance subclass that excludes such agents. Because the trial court=s order is supported by the evidence presented and we have found no conflict within the subclass, we conclude that the trial court did not abuse its discretion in overruling Farmers= objection. *See Glassel*, 956 S.W.2d at 682.

**16**

Next, Farmers speculates that allowing both Leonard and Sawyer to represent multiple subclasses will create a conflict if a settlement opportunity occurs because these classes will be competing for the maximum return from a limited settlement fund. Farmers claims that each subclass requires its own representative in order to adequately represent the interests of each member of that particular subclass. Additionally, Farmers argues that the presence of both former and current agents in the competing subclasses will exacerbate the conflict because the former agents do not need to maintain an ongoing business relationship with Farmers. In support of its argument, Farmers cites us to two cases involving settlement classes in which conflicts were present between subclasses. *See Amchem*, 521 U.S. 597; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

We are unpersuaded by Farmers= reliance on these two cases. Both *Amchem* and *Ortiz* dealt with the certification of a proposed *settlement* class in personal injury class actions based on the class members= exposure to asbestos. Therefore, the posture of those cases that led to the development of intra-class conflicts differs from the posture of this case. The class in our case does not involve personal injury causes of action, nor has a proposed settlement been negotiated by the parties *prior to* the certification hearing. The problems which led to a conflict in the asbestos cases were unique to personal injury cases. In *Amchem* and *Ortiz,* the proposed settlement had already been established but the damages to each class member were largely undefined and could vary based on time and severity of exposure to asbestos. That situation created a conflict because not all members of the class had suffered the same amount of damages, but all would be competing for a portion of the same settlement fund.

**17**

Farmers= case differs from *Amchem* and *Ortiz* because the amount of damages for each subclass can be determined mathematically based on the amount of the bonus due to each class member according to the bonus award contracts. Thus, the damages for each class member are identifiable and questions about the mathematical calculations to be applied for each class member could be answered by the fact finder. Furthermore, this case does not involve a settlement class. Because the parties have not negotiated a settlement, Farmers= argument that possible conflicts between the subclasses could develop if the opportunity to settle presents itself is purely speculative. Farmers presented no evidence at the certification hearing that it would be limited in its ability to pay the class members= claims if a jury determined a breach occurred, and thus, there is nothing in the record to suggest a limitation on Farmers= ability to pay damages. The conflicts present in *Amchem* and *Ortiz* do not exist in this case. We overrule Farmers= second issue.

In its third issue, Farmers contends that Leonard and Sawyer fail to meet the requirements of rule 42 concerning adequacy of representation. Two elements must be considered for determining if the named plaintiffs adequately represent a class: (1) it must appear that the named plaintiffs will vigorously prosecute the class claims through their attorneys, and (2) there must be an absence of antagonism or conflict between the named plaintiffs= interests and the interests of the absent class members. *Sun Coast Res., Inc. v. Cooper*, 967 S.W.2d 525, 538 (Tex. App.CHouston [1st Dist.] 1998, pet. dism=d w.o.j.). Among the factors affecting the adequacy determination are (1) adequacy of counsel, (2) potential for conflicts of interest, (3) personal integrity of the plaintiffs, (4) whether the class is unmanageable because of geographical limitations, (5) whether the plaintiffs can afford to finance the class action, (6) the

**18**

representatives= familiarity with the litigation and belief in the legitimacy of the grievance, and (7) the representatives= willingness and ability to take an active role in and control the litigation, and to protect the interests of the other class members. *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 (Tex. App.CAustin 1995, writ dism=d w.o.j.); *Glassell*, 956 S.W.2d at 682. A class representative should be familiar with the basic issues, including composition of the class and damages sought. *See Microsoft*, 914 S.W.2d at 615.

Farmers disputes Leonard=s capacity to serve as a representative on the grounds that he breached a fiduciary duty he owed to Farmers. Although this matter does not directly bear on the breach of contract claims asserted by the class, Farmers claims that Leonard=s purported breach provides Farmers with an affirmative defense as to Leonard individually, thus rendering Leonard atypical of the class. Farmers also challenges the personal integrity of the class representatives by claiming that both Leonard and Sawyer suffer from a lack of credibility. Farmers bases its contention largely on the fact that Leonard and Sawyer made a large number of errata sheet corrections to their deposition testimony. Farmers also contends that Sawyer concealed facts after he had resigned as an agent and then sought reinstatement. Farmers believes that Sawyer=s failure to disclose that he had been in discussions with Leonard and class counsel about the possibility of filing this lawsuit because Farmers breached the bonus contracts, demonstrates that Sawyer is dishonest and unsuitable to serve as class representative. Farmers also doubts that class counsel can provide adequate representation for the class because class counsel permitted Leonard and Sawyer to change their depositions. However, Texas Rule of Civil Procedure 203.1 allows a witness to change deposition responses. Tex. R. Civ. P. 203.1(b). Although the errata sheet changes totaled 163 combined

**19**

corrections, we note that the Leonard and Sawyer depositions lasted for approximately fourteen hours, and resulted in 873 pages and 21,000 lines of testimony. Farmers presented these arguments at the certification hearing. Although Farmers reiterates these arguments on appeal, we recognize that the trial court is in the best position to weigh the credibility of Leonard and Sawyer as well as to determine the ability and integrity of class counsel to represent the entire class.

After the certification hearing concluded, the trial court found that class counsel possessed the qualifications and experience to handle this class action litigation.[5] Furthermore, the trial court found that Leonard and Sawyer would fairly and adequately protect the interests of the class and that their individual interests were not antagonistic to the members of the subclasses which they represent. The trial court also found that each class representative demonstrated personal integrity, possessed sufficient knowledge, interest, and understanding of the litigation, and believed in the legitimacy of his case. Farmers= arguments, based on Leonard=s and Sawyer=s credibility and that they made too many changes to their depositions, do not persuade us that the trial court abused its discretion in determining that Leonard and Sawyer met their burden on the adequacy of representation requirement. Therefore, we overrule Farmers= third issue.

*Predominance and Superiority*

---

[5] Farmers points to that portion of the record wherein the trial court admonished class counsel for certain alleged misstatements and inaccuracies regarding some submitted case authority. However, we note that, in exercising its discretion in ruling on the adequacy of representation, the trial court concluded in its findings of fact and conclusions of law that class counsel possessed the qualifications and experience to represent the class and conduct this litigation.

In its fourth issue, Farmers claims that the trial court abused its discretion in certifying the class because the predominance and superiority requirements have not been met. *See* Tex. R. Civ. P. 42(b)(4). Farmers asserts that the certification order does not contain an adequate trial plan describing how the trial court anticipates the common and individual issues in the case will be tried. Within its attack on the trial plan, Farmers opines that the common issues in the case do not predominate over the individual issues. Farmers also contends that the class action device in this case is not the superior means for trying the class members= claims because individual adjudication is plausible.

In conducting the initial evidentiary review at the certification hearing, the trial court must conduct a rigorous analysis to determine whether all prerequisites have been met before ruling on class certification. *Bernal,* 22 S.W.3d at 435. Trial courts may not adopt a Acertify now and worry later@ approach to class certification. *Id.* However, we accord trial courts an abuse of discretion standard because the class certification decision occurs early in the litigation process, before the parties have had the opportunity to fully develop the case and such issues as trial plan will have only been determined as a preliminary matter. The trial court must approach the certification decision cautiously in order to balance the requirements of rule 42 and the difficulties presented by the case=s infancy. *See id.* Thus, the trial court=s certification order must indicate how the claims will likely be tried so that conformance with the rule may be meaningfully evaluated. *Id*.

After thoroughly reviewing the record, we are convinced that the trial court rigorously analyzed the issues presented in this case and properly arrived at the determination to certify the class. In addition to hearing multiple motions from both parties prior to the certification hearing, the trial court

conducted a six-day certification hearing. During this lengthy hearing, the trial court thoroughly reviewed all of the parties= claims and was presented with an enormous amount of evidence. The record in this case comprises a seven-volume clerk=s record containing 1,579 pages, a five-volume first supplemental clerk=s record containing an additional 1,974 pages, and a ten- volume reporter=s record. The trial court heard testimony from ten witnesses and received deposition transcripts from a number of other witnesses. During the hearing, nearly 260 exhibits, including expert witness reports and all of the contracts at issue, were admitted into the record. The trial court based its certification decision on the extensive development of the issues presented in this case, and we cannot say that its decision was improper. The trial court=s order and the state of the record assure us that the trial court=s decision was informed, cautious, and made in compliance with the requirements of rule 42.

The certification order contains a detailed explanation of the anticipated trial plan. Following the certification hearing and a review of all of the evidence before it, the trial court determined that the substantive matters at issue in Leonard=s and Sawyer=s breach of contract claims are identical to the issues of all class members. The trial court found that the bonus documents and the manner in which they were applied were identical for the class. Therefore, a determination of all questions raised in Leonard=s and Sawyer=s pleadings resolve all of the issues for the class. Furthermore, the trial court found that the calculation of any damages for Leonard and Sawyer would establish a formula by which all class members= damages, if any, could be computed. These findings demonstrate that the issues common to the class predominate over individual issues.

Based on these findings, the trial court announced in the order that the case could be tried as a single breach of contract action in a bench trial. The order continues with the following statement:

> Issues such as whether any or all of the bonus documents constitute one or more contracts, the identity of the parties to any such contracts, the terms of the offers, the meaning of the terms, words, and phrases contained within any such contracts, and the interpretation of any such contracts are questions of law which the Court anticipates can be determined at a summary judgment or bench trial.

Recognizing that other issues, such as a determination that the bonus award contracts were in fact ambiguous, may develop in the course of this litigation, thereby requiring a reevaluation of the trial plan, the trial court included the following alternative to the trial plan:

> In the event fact issues of contract interpretation develop, the Court anticipates presenting a single jury with specific questions concerning the disputed terms and, once receiving the jury=s findings, utilizing those findings to determine as a matter of law the correct contract interpretation and, depending upon the findings, establishing a damage formula applicable to all Class Members.

In *Bernal*, the supreme court stated that a trial court abuses its discretion if it certifies a class without knowing how the claims can and will likely be tried. *Bernal*, 22 S.W.3d at 435 (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). The trial court=s findings and statements regarding a trial plan comply with the *Bernal* mandate. The trial court=s order demonstrates that based on the parties= claims and defenses, the relevant facts, all of the evidence in the record, the applicable substantive law, and the parties= anticipated theories of the case, the trial of this case may proceed under one of two alternative paths, both of which will be manageable and protect the interests of all parties.

Finally, Farmers contends that this case does not comply with the requirement that class treatment be superior to other available methods for the fair and efficient adjudication of the controversy. *See* Tex. R. Civ. P. 42(b)(4); *Bernal*, 22 S.W.3d at 433. Among the factors a court should consider in determining superiority are (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (3) the desirability or undesirability of concentrating the litigation in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Bernal*, 22 S.W.3d at 433-34. Farmers bases its superiority challenges on the fact that the damages for each class member could be substantial enough to make individual adjudication not only possible, but the superior method of disposing of these claims. However, a marginal case value for individual cases, while important in determining superiority in some class actions, is not an absolute prerequisite to certification under the rule. *See* Tex. R. Civ. P. 42(b)(4).

The trial court found class adjudication to be superior to individual actions for a number of reasons. Trying this case as a single action provides great economic benefits, as opposed to the alternative of trying 13,000 individual actions. And with no other lawsuits having been filed regarding these particular issues, the economic benefit has not been diluted. Furthermore, individual adjudication of identical fact patterns poses the risk of inconsistent results. Finally, because many of the unnamed class members are current Farmers agents, class treatment can quell the fears of retaliation by Farmers if individual lawsuits were filed. Based on this reasoning, we cannot say the trial court erred in determining that class issues

**24**

predominate over individual issues and that class treatment is superior to the pursuit of 13,000 individual actions. We overrule Farmers= fourth issue.

## CONCLUSION

Having reviewed the record and considered the arguments of both parties, we conclude that the trial court did not abuse its discretion in ordering class certification. The trial court=s order is affirmed.

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: August 30, 2002

Publish

25