**RANGER INSURANCE COMPANY,**
**Appellant,**

v.

**Sara ROGERS et al., Appellees.**

**No. 12297.**

Court of Civil Appeals of Texas,
Austin.

Nov. 12, 1975.

Rehearing Denied Dec. 3, 1975.

L. W. Anderson, Dallas, for appellant.

Tom H. Davis, Byrd, Davis, Eisenberg & Clark, Austin, for appellees.

SHANNON, Justice.

Appellees, Sara Rogers, the administratrix of the estate of John D. Rogers, deceased, and Billie L. Arnold, individually and as next friend for William Allen Arnold, a minor, sued appellant, Ranger Insurance Company in the district court of Travis County. After a trial to a jury and upon appellees' motion, the district court entered judgment *non obstante veredicto* for Billie L. Arnold and the minor child for a total of $450,000.00.

The event made the basis for this appeal was the crash of a Piper aircraft in West Texas on April 13, 1972. At the time of the crash John D. Rogers was the pilot of the aircraft and Billy J. Arnold was a passenger. Rogers was president of and a major stockholder in United Housing Corporation. Rogers had used the airplane for trips about the area in the furtherance of his business interests. On the occasion of the crash he and Arnold had flown to Lubbock in connection with the commencement of a new business venture for United Housing Corporation. Both Rogers and Arnold were killed in the crash.

Appellant had written a liability insurance policy pertaining to the involved airplane with $500,000.00 limits for each occurrence. Early in the course of events appellant took the position that its policy offered no coverage at the time of the crash for the reason that the pilot was flying the aircraft in violation of the terms of the policy. In an effort to resolve the coverage problem appellant filed a declaratory judgment proceeding in the United States district court for the Northern District of Texas seeking a judgment that it was not liable for the claims arising from the crash. The jurisdictional basis for filing suit in the United States district court was diversity. In or-

der to preserve diversity the insurance company did not join certain of the interested parties who were residents of Texas. The United States district court dismissed the suit upon the basis that the estate of Billy J. Arnold was a necessary party and if the estate were joined, there would not be complete diversity of citizenship. *Ranger Ins. Co. v. United Housing of New Mexico, Inc.,* 488 F.2d 682 (5th Cir. 1974).

Billie L. Arnold, wife of the deceased passenger, filed a death action in the United States district court for the Western District in El Paso against the administrator of the estate of the pilot and United Housing Corporation. Counsel for the administrator of the estate of Rogers tendered the defense of the suit in the United States district court to the insurance company. The insurance company took the position that there was no coverage of the crash by the terms of its policy and refused to defend the suit without a "reservation-of-rights" agreement. The administrator of the estate refused to permit the company to defend the suit with such an agreement.

In September, 1973, a consent judgment was entered by the United States district court approving the settlement made by the parties. The approval of the court was necessary inasmuch as a minor child was one of the beneficiaries of the death benefits. By the terms of that judgment Billie L. Arnold recovered $425,000.00 from the estate of John D. Rogers and the minor child recovered $25,000.00 from the said estate.

In March, 1974, appellees filed suit in the district court of Travis County on the judgment obtained in the United States district court. In their trial petition the appellees averred that at the time of the crash, the appellant insurance company had in force a liability insurance policy which protected John D. Rogers against liability for injury or death to passengers in the plane. Although requested to do so, the insurance company refused to defend the estate of John D. Rogers and, likewise, the insurance company refused to pay the judgment entered in the United States district court. Appellee pleaded further that by the terms of its liability policy the insurance company was responsible to them for the amount of the judgment entered in the United States district court in addition to reasonable attorneys' fees for the defense of that suit.

In its trial pleading, appellant pleaded (1) that the judgment obtained in the United States district court " . . . amounted to a fraud on the Court and was procured through collusion between the parties, and not in good faith, and accordingly does not constitute a proper judgment which can be sued upon"; (2) that the amount of the judgment obtained in the United States district court was unreasonable, and that the appellees had the burden to prove the reasonableness of that judgment; and (3) that at the time of the crash, the pilot was operating the airplane in an area where there was not proper visibility, all in violation of the terms of the insurance policy and, therefore, there was no coverage under that policy for claims arising from the crash.

The charge of the court contained five special issues. Special issue number one asked, "Do you find from a preponderance of the evidence that on the occasion of the crash, John Rogers was flying his aircraft in an area where the visibility was one mile or more?" The jury answered "He was." Special issue number two queried, "Do you find from a preponderance of the evidence that on the occasion of the crash, John Rogers was flying his aircraft in an area where the visibility was less than one mile?" The jury answered "He was not." Special issue number four inquired, "Were the terms and provisions of the judgment which was agreed to by United Housing and the Rogers Estate and entered by the United States District Court in El Paso entered into in good faith?" The jury was instructed that the term "good faith" as used in the charge meant not only honesty in fact in the conduct of the transaction concerned, but also meant conduct within

the bounds of reason or with a reasonable basis when viewed under the facts and circumstances which existed at that time. The jury was further instructed that if an insurer refused "to defend its insured pursuant to the terms of the policy in question, the insured may in good faith enter agreements to limit his liability and expenses." The jury answered "no" in response to special issue number four. The jury answered special issue number five that $250,000.00 for Billie L. Arnold and $35,000.00 for the minor child would have been a reasonable settlement for United Housing and the estate of John D. Rogers to have made with appellees.

The insurance company filed a motion for judgment to the effect that judgment be entered based upon the answers of the jury, awarding Billie L. Arnold $250,000.00 and the minor child $25,000.00.

Appellees filed a motion for judgment *non obstante veredicto* asking the jury to disregard the answer of the jury to special issue number four and to enter judgment for them for the full amount of the judgment obtained in the United States district court. Appellees' motion for judgment *non obstante veredicto* stated no grounds, other than that appellees were entitled to such judgment "as a matter of law."

As stated above, the district court granted appellees' motion for judgment *non obstante veredicto* and entered judgment for Billie L. Arnold in the sum of $425,000.00 and for the minor child in the sum of $25,-000.00.

Points of error one and two constitute appellant's primary attack upon the judgment *non obstante veredicto*. Point one is that the court erred in failing to grant appellant's motion for judgment since the jury found that the " . . . terms and provisions of the *settlement* agreed upon by United Housing and the Rogers Estate, and the judgment entered pursuant thereto by the United [*sic*] District Court of El Paso, were not reasonable and made in good faith. . . . " (Emphasis added) Point

of error two is that the court erred in entering judgment *non obstante veredicto* for the reason that the evidence " . . . in connection with the reasonableness and good faith of the *settlement* involving the entrance into the agreed judgment . . . " was contested, that counsel for appellees did not object to the submission of special issue number four, and as a matter of law " . . . reasonableness and good faith are necessary elements for the appellees to prove to recover on any judgment where there was no evidence offered and no trial of any issues made to the court." (Emphasis added)

Appellees defend the judgment *non obstante veredicto* upon three grounds: (1) that the consent judgment is not subject to collateral attack by appellant, (2) that the burden was upon the insurance company to prove that the amount of the settlement was unreasonable, and (3) that appellees established the reasonableness of the settlement as a matter of law.

In the beginning, it should be stated that although appellant's points of error refer to the *settlement* between the parties, it is the consent *judgment* of the United States district court which is the subject here under consideration.

The consent judgment provides in part: " . . . Plaintiff and defendant announced in open Court that a settlement of all claims asserted herein had been agreed upon by and between the parties subject to the approval of the Court, requested the Court to consider the terms and provisions of the proposed settlement agreement and enter judgment accordingly. The Court, having considered the facts and circumstances of this case, and the proposed settlement agreement, approves the terms and provisions thereof and finds that the amount of the settlements to the plaintiff is in all things reasonable."

■ A consent judgment has the same degree of finality and binding force as does one entered by the court at the conclusion of an adversary proceeding. *Pollard v.*

*Steffens,* 161 Tex. 594, 343 S.W.2d 234, 239 (1961), *Wagner v. Warnasch,* 156 Tex. 334, 295 S.W.2d 890 (1956), *Farr v. McKinzie,* 477 S.W.2d 672 (Tex.Civ.App.1972, writ ref'd n.r.e.), *Akin v. Akin,* 417 S.W.2d 882 (Tex.Civ.App.1967, no writ), 3 Freeman, *Judgments,* § 1350 (1925).

Though not articulated, appellant's thesis seems to be that it was a stranger to the consent judgment and that, as a result, the judgment has no binding effect on it. See *State Mortgage Corp. v. Traylor,* 120 Tex. 148, 36 S.W.2d 440 (1931), *Scales v. Wren,* 103 Tex. 304, 127 S.W. 164 (1910). University of Texas: Hodges, *Collateral Attacks on Judgments,* 41 Texas L.Rev. 163, 164 (1962).

■ With respect to appellant's relationship to the consent judgment, it should be observed that appellant had contracted to pay on behalf of the insured all sums which the insured " . . . shall be legally obligated to pay as damages because of . . death . . . sustained by any person . . . caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." Appellant had notice of the suit filed in the United States district court in El Paso. In fact, counsel for the Rogers' estate had tendered the defense of that suit to appellant. Had appellant accepted the defense, it would have had, of course, the opportunity to conduct the defense in the manner most likely to have defeated the plaintiffs' claim or at least to have reduced the amount of the damages. Appellant would accept the defense of the case only with a "reservation-of-rights" agreement. The administrator of the Rogers' estate and United Housing Corporation were not obligated to accept appellant's effort to limit its responsibility under the contract of insurance, and they ultimately settled the case and obtained the consent judgment. Under these circumstances appellant will not be regarded as a stranger to the consent judgment. *American Fidelity & Casualty Co. v. Williams,* 34 S.W.2d 396, 402 (Tex.Civ.App.1930, writ ref'd).

■ Having determined that appellant was not a stranger to the consent judgment, we are of the opinion that the rules with respect to collateral attacks are applicable to appellant. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325 (Tex.1895). To the contrary, a direct attack on a judgment is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review. *Crawford v. McDonald, supra.* The grounds upon which a collateral attack may be successful are that the court rendering judgment has: (1) no jurisdiction of the person of a party, or his property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Austin Independent School District v. Sierra Club,* 495 S.W.2d 878 (Tex. 1973). 41 Texas L.Rev. 163, 164, *supra.*

■ The grounds of appellant's attack on the consent judgment were none of the above, but instead were that the consent judgment was obtained by fraud and the amount of the judgment was unreasonable. Appellant did not request the submission of issues inquiring into fraud in the procurement of the consent judgment. Even had appellant obtained the submission of those issues, and even had it obtained favorable answers to those issues, judgment *non obstante veredicto* nevertheless would have been proper since under those circumstances the judgment of the United States district court would not have been subject to collateral attack. *Mikeska v. Leon & H. Blum,* 63 Tex. 44 (1885), *Murchison v. White,* 54 Tex. 78 (1880), 41 Texas L.Rev. 499, 519 (1963). Had appellant assumed the burden of requesting an issue similar to special issue number four, inquiring of the reasonableness of the consent judgment, and had appellant obtained an affirmative finding to such issue, judgment *non obstante veredicto* would have been proper for the same reason.

As we are of the opinion that appellant's defenses of fraud and unreasonableness of amount represent an attempted collateral attack upon the consent judgment obtained in the United States district court, points of error one and two will be overruled.

Appellant's basis for denying coverage was that at the time of the crash, the pilot allegedly was flying the aircraft in violation of paragraph seven of the insurance policy. Paragraph seven provides:

"PILOT CLAUSE. Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight . . . John Rogers."

John D. Rogers did not have an instrument rating. The Visual Flight Rules require that a pilot have one mile of visibility. Appellant contended that at the time of the crash the pilot did not have a one-mile visibility and since he did not have an instrument rating, he did not have an appropriate rating for the flight, all in violation of paragraph seven of the policy.

Coverage, then, depended upon whether or not the pilot was flying the aircraft in an area where the visibility was one mile or more or less than a mile. As indicated earlier, the jury answered by special issue number one that the pilot was flying the aircraft in an area where the visibility was one mile or more. In response to special issue number two the jury answered that the pilot was not flying the aircraft in an area where the visibility was less than one mile.

By several points of error appellant attacks the jury's answers to those special issues as being supported by no evidence and so contrary to the great weight and preponderance of the evidence so as to be manifestly unjust.

The crash occurred near the intersection of the Hobbs-Seminole Highway on April 13, 1972. The aircraft had flown out of Lubbock about 7:30 in the evening into a dust storm. At about 7:44 the aircraft returned to the Lubbock area, and its pilot advised the Lubbock tower that he had "no horizon." The tower gave the pilot directions for a landing. By that time, however, the pilot had changed his mind, and he told the tower " . . . my . . . visibility has improved so much over here, I think maybe . . . I might try VFR going south down towards Seminole." The pilot continued to the tower, " . . . I'm VFR, I'm going to stay right over the highway, thank you."

When the plane was about twenty miles east of the airport at Hobbs, New Mexico, the pilot received a weather report from the tower. In response to that report the pilot queried, " . . . We're still VFR then?" The tower replied, "Well, sir, it's quite marginal in VFR, visibility is fluctuating between probably two and a half to three and a quarter or three and a half miles."

Appellees called as an expert witness, James C. Fidler, a meteorologist and a pilot. He testified that between 7 and 9 P.M. on the evening in question the weather stations in Lubbock and in Hobbs reported a mile or more visibility. Hobbs was the weather station closest to the crash.

Appellees placed into evidence the deposition testimony of the deputy sheriff of Gaines County, Hamilton Bell. Bell was on patrol on April 13 about a mile away from the scene of the crash. At that time, he " . . . just saw an orange flash just lit the sky up in front of me." " . . . And that's all I saw was just an orange flash."

Bell testified that at about the time of the crash one could see an unlighted object at a quarter to a half mile distance, but that one could see a flash or light at a greater distance than an unlighted object.

Appellant read into evidence portions of Bell's deposition to the effect that at the time of the crash there was a "pretty bad sandstorm blowing." The sandstorm was "pretty bad, about the worst one we had that year, I guess." Bell stated that " . .

just driving down the highway, I imagine the visibility was probably a quarter to a half mile at times." In answer to a question inquiring as to whether the weather conditions made it hard to see, Bell responded, "Well yes. The sand was blowing real hard."

Fidler was recalled and was permitted to testify, based upon the deposition testimony of Bell, that the minimum visibility at the time of the crash must have been about one and one-half miles.

Appellant called Harold Taft, a meteorologist, as an expert witness. He had made an investigation concerning the weather conditions at or near the scene of the crash at the time concerned. Taft testified that based upon his study of the weather reports the site of the crash was near the core of the storm, and that the forward visibility at that time was a quarter of a mile to a half mile.

Appellant also called Edward Dale Cooper who was returning by automobile from Hobbs to Seminole on the evening of the crash. He saw the lights of the airplane and he later saw the light from the explosion caused by the crash. Cooper testified that at the time of the crash the visibility could not have been "over half a mile."

As may be seen, the appellant's expert testimony was pitted against the expert testimony tendered by appellees. Appellant's lay testimony concerning visibility was contrary to the figures of the records of the nearest weather station. The weight and probative force of evidence is entirely for the jury. Likewise, the jury is the exclusive judge of the credibility of witnesses and the weight to be attached to their testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). The law does not attempt to direct the jurors as to the amount or kind of evidence which ought to produce a belief in their minds. The jury may believe a witness although he has been contradicted, and, likewise, the jury may believe the testimony of one witness and reject the testimony of other witnesses.

*Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359 (1957), 1 McCormick and Ray, *Texas Law of Evidence*, § 3 (2nd ed. 1956).

We are satisfied from a review of the statement of facts, some of which has been summarized above, that the answers of the jury concerning visibility were supported by probative evidence and that those answers were not contrary to the great weight and preponderance of the evidence.

Point of error number ten complains that the trial court misplaced the burden of proof in special issue number two. Point of error number nine claims error by the court in refusing to submit appellant's requested special issue. The requested special issue provided, "Do you find from a preponderance of the evidence, that on the occasion of the crash, John Douglas Rogers was not flying his aircraft into an area where there was not proper visibility under Visual Flight Rules?" Appellant says that the requested special issue properly placed the burden of proof in connection with the coverage question. We will overrule the points of error for the following reasons.

Wherein the lawsuit is on an insurance contract which insures against certain general hazards, but the contract of insurance contains other provisions limiting such general liability, the insurance company must plead that the loss was due to a risk or cause coming within a particular exception to the general liability. Tex.R. Civ.P. 94. At trial, the burden of proof is upon the insured to negative the exclusions and limitations contained in the policy and pleaded as a defense by the insurance company. *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652 (Tex. 1967), *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309 (Tex.1965). In the case at bar, then, it was appellees' burden to obtain a submission and favorable finding negating appellant's coverage defense.

Appellant did *not* object to the submission of special issue number one. As it will be recalled, special issue number one inquired whether John Rogers was flying his aircraft in an area "where the visibility was one mile or more." The jury responded affirmatively. Appellant waived any complaint of any improper placement of the burden of proof in special issue number one by its failure to object. Tex.R.Civ.P. 274. Assuming, but not deciding, that appellant's requested special issue is correct, its tender will not be given effect as an objection to special issue number one. If an issue is submitted in defective form, an objection is necessary, and a request for submission in correct form will not preserve the complaint. *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176 (Tex.1951), Hodges, *Special Issue Submission in Texas,* Section 69 (1959 with 1969 Supp.).

In view of appellant's failure to object to the submission of special issue number one and the jury's response to that issue, the submission of special issue number two, if error, was not such error as to amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex. R.Civ.P. 434.

In connection with its requested special issue appellant requested the court to define "VFR Conditions" as the term was used in the tendered special issue to mean ". . . that flight visibility is less than one (1) mile." The refusal of the court to give the instruction forms the basis for appellant's point of error eight. Appellant does not offer argument or authority in support of this point. It is settled that the points of error are required to be supported by argument and authority, Tex.R.Civ.P. 418(c), and if not supported, the points are waived. *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd), *Hoover v. Barker,* 507 S.W.2d 299 (Tex.Civ.App.1974, writ ref'd n. r. e.).

By its point of error number twelve appellant claims error by the district court in permitting counsel for appellees to make an opening statement to the jury wherein he outlined in detail the names and the substance of the testimony of many witnesses he intended to call. Appellant's counsel objected repeatedly during the appellees' opening statement and moved for a mistrial. After the district court had overruled appellant's objections and motion for mistrial, appellant's counsel, in turn, gave his opening statement in terms almost as detailed as that of appellees.

Texas R.Civ.P. 265(a) provides in part: "The party upon whom rests the burden of proof on the whole case shall be permitted at his option to read his pleading or *to state* to the jury *briefly the nature of his claim or defense.*" (Emphasis added)

Rule 265(a) does not afford counsel the right to detail to the jury the evidence which he intends to offer, nor to read or describe in detail the documents he proposes to offer. The practice of detailing the expected testimony in the opening statement places matters before the jury without the trial court having had an opportunity to determine the admissibility of such matters. See Abbots Civil Jury Trials, §§ 96 and 97 (5th ed. 1935). We are of the further opinion that such a practice sometimes has the effect of misleading or confusing the jurors as between the expectations of counsel and evidence actually admitted. The proper limitation of the opening statement is a matter necessarily resting in the discretion of the trial court subject to review for abuse of discretion. 1 Thompson on Trials, § 266 (2nd ed. 1912).

The opening statements of counsel for appellees and appellant were in violation of Rule 265(a). The district court should not have tolerated counsel for either party to have detailed the evidence which he expected to introduce, and the court's failure to limit counsel was erroneous. Under the circumstances of this case, however, particularly in view of the fact that counsel

for both parties violated Rule 265(a), we are not convinced that the court's failure to sustain the objections and the failure to grant the motion for mistrial was such error as was calculated to cause the rendition of an improper judgment.

■ Appellees read into evidence the deposition testimony of Glen Hillman. Hillman was a farmer who was inside his trailer house watching television on the evening of the crash. He was unaware of the crash until someone came to his door and ". . wanted to know what all the lights were doing out in the pasture next to my farm." Over counsel's objection, appellees' counsel read into evidence the testimony of Hillman that since the time of the crash the area had experienced a dust storm of the same approximate magnitude as the one of the night of the crash. In the more recent dust storm he was able to see the light at an elevator and gin yard about one mile from his trailer house. We will sustain appellant's fourteenth point of error complaining of the admission of Hillman's testimony. Hillman was inside his trailer house watching television when the crash occurred. It was not until some time later that he knew that there had been an accident. He knew, in general, that there was a sandstorm in progress, but he was in no position to compare the density of the sandstorm at the time of the crash with the density of a later sandstorm. As a result, we are of the opinion that Hillman's opinion as to visibility amounted to no more than surmise and speculation and should not have been received. 2 McCormick and Ray, *Texas Law of Evidence*, § 1399 (2nd ed. 1956). As previously noticed, appellees introduced other evidence from which the jury could have concluded that the visibility at the time of the crash was a mile or more. Therefore, we are of the opinion that the district court's error did not amount to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

Appellant's point of error number fifteen complains of the admission of evidence that Billy J. Arnold expected to make fifty thousand dollars each year wherein the business had not commenced, the location of the business had not been secured, and no salary or earnings had been paid to Arnold at the time of his death. Appellant says that such evidence was speculative and amounted to more than conjecture. In view of our holding with respect to appellant's points of error one and two, it is not necessary to pass on point of error fifteen.

Appellant has many other points of error claiming error of the court mainly in the admission of evidence and claiming improper jury argument on the part of appellees' counsel. We have considered those points of error and have concluded that some of those points do present error, but that such error was not such that probably caused the rendition of an improper judgment.

The judgment is affirmed.