

## NUMBER 13-04-670-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CELESTINA ADAME, ET AL.,          **Appellants,**

**v.**

LAW OFFICE OF ALLISON &
HUERTA, A TEXAS GENERAL
PARTNERSHIP, ET AL.,          **Appellees.**

**On appeal from the 94th District Court of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Wittig[1]**
**Memorandum Opinion by Justice Wittig**

This is a summary judgment case. Appellants Celestina Adame, individually and

as next friend of Erica Adame, a minor, et al., first challenge the jurisdiction of the trial court

---

[1]Retired Fourteenth Court of Appeals Justice Don Wittig assigned to this Court by Chief Justice of the Supreme Court of Texas pursuant to the government code. TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

to hear motions for summary judgment filed by appellees, Law Offices of Allison & Huerta, a Texas General Partnership, et al. If the visiting judge assigned to hear the matter had jurisdiction, then appellants contend the trial court erred by granting appellees' motions for summary judgment, and not granting their motion for new trial. We affirm the judgment of the trial court.

## I. Assigned Visiting Judge: Jurisdiction

In the underlying litigation, appellees were involved in securing a $65,700,000 settlement of a class action, toxic-tort case. On June 30, 1995, the trial court converted the class action suit from an "opt out" class into a "mandatory" class. Some 505 dissident members of the class appealed this order, but over time, all but a very few settled their cases and dropped their appeals. On September 12, 1995, the 105th District Court of Nueces County held a rule 42 "fairness hearing," and approved the final class settlement by its Order and Dismissal With Prejudice. Some dissidents, appellants herein, filed malpractice and related claims against appellees. On February 9, 1999, the presiding administrative judge assigned Former District Judge Robert Pate to hear all matters in this malpractice case. The assignment continued so long as necessary to complete the trial, pass on motions for new trial, and all other matters.

Before an earlier appeal, appellees filed motions for summary judgment which were granted by Judge Pate. Appeal was taken from the prior summary judgments to our Court. We dismissed this appeal of the initial summary judgments for want of jurisdiction. *Adame v. Huerta*, No. 13-00-781-CV, 2003 LEXIS Tex. App. 7115, *1 (Tex. App.–Corpus Christi, Aug. 21,2003, no pet.) (not designated for publication). We ruled that the judgment was not final because it did not dispose of all issues or parties. Thereafter, additional summary

2

judgment motions were filed and again heard by Judge Pate. The trial judge again granted the motions for summary judgment, now the subject of this appeal.

Hearings for the summary judgments were set on September 23 and 24, 2004. Notice of hearings was sent on July 23, 2004. On September 15, 2004, appellants filed three objections to Judge Pate for the first time, even though he had been appointed to this case in 1999. Judge Pate heard the objections September 23, 2004, and entered a detailed order overruling the objections to the visiting judge. In the order, the trial court found that he was properly assigned for as long as necessary to complete the trial and hear the motion for new trial, et cetera. Because the Thirteenth Court of Appeals dismissed the earlier appeal for want of jurisdiction, the trial court never lost jurisdiction. Therefore, the assignment of Judge Pate was still effective and continuing.

Appellants have not challenged any of the findings of this order.

Appellants argue all orders issued by Judge Pate after the initial appeal are null and void. They cite *Starnes v. Chapman*, 793 S.W.2d 104, 106 (Tex. App.–Dallas, 1990 orig. proceeding) (citing TEX. R. CIV. P. 329(b); *First City Bank v. Salinas*, 754 S.W.2d 497, 498 (Tex. App.– Corpus Christi 1988, orig. proceeding))*. Starnes* holds that when the time periods for filing and ruling on motions for new trial on a judgment expired, and an appeal was perfected, the visiting judge's plenary power over the cause expired, as did his assignment. *Id.* We do not disagree. However, subject to appellate rule 29.5, a trial court retains plenary jurisdiction, and therefore power over its interlocutory orders, until it enters a final judgment. TEX. R. APP. P. 29.5; *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993). The trial court's plenary power is "full, entire, complete, absolute, perfect, [and]

3

unqualified." *Orion Enter., Inc. v. Pope*, 927 S.W.2d 654, 658 (Tex. App.–San Antonio 1996, no writ) (orig. proceeding).

In this case, we previously held there was no final, appealable judgment before this Court over which we had jurisdiction, and we did not merely abate the appeal until a final order was before us. *Adame*, 2003 Tex. App. LEXIS 7115, at *17. A judgment is final if it disposes of all pending parties and claims in the record. *First Nat'l Bank v. De Villagomez*, 54 S.W.3d 345, 348 (Tex. App.–Corpus Christi 2001, pet. denied). This Court was without power to review the orders granting summary judgment. *Adame,* 2003 Tex. App. LEXIS 7115, at *17. We concluded: "The appeal must be, and hereby is, dismissed for want of jurisdiction." *Id.* Thus, because no final judgment had yet been entered, the trial court had the power to amend the temporary orders it had previously issued until it entered a final judgment. TEX. R. APP. P. 29.5; *Fruehauf Corp.*, 848 S.W.2d at 84; The trial court retained full, entire, and complete powers. *See Orion Enter., Inc.,* 927 S.W.2d at 658.

Appellants also argue that even if their objection to Judge Pate was procedurally defective, it should have been referred to another judge to make that determination. They contend that when a trial judge is "challenged," it has only two options: (1) grant the challenge; or (2) refer the challenge for a hearing before another judge. Appellants rely in part upon civil procedure rule 18a(d). *See* TEX. R. CIV. P. 18.a(d). This rule pertains to recusal or disqualification of a judge. *Id.* Appellants' three motions did not seek to either recuse or disqualify Judge Pate. Nor does the record disclose grounds for recusal or disqualification of the visiting judge. Rather, the objections were directed at the

4

assignment of Judge Pate as a visiting judge and the argument above that he had lost jurisdiction.

Appellants also cite *Ex parte Eastland*, 811 S.W.2d 571, 572 (Tex. 1991). There, under the terms of the letter of assignment, the visiting judge's jurisdiction over the disbarment proceeding was to continue only as long as necessary to complete the trial of the case and to pass on any motions for new trial. *Id.* Since no motion for new trial was filed in the case, his authority expired thirty days after judgment. *Id.* We agree with the reasoning of that case, but find it inapplicable herein. Under the "law of the case," we have already held that there was no final judgment signed before the last set of summary judgment motions now before us. *Adame*, 2003 Tex. App. LEXIS 7115, at *17; *see Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986*)* (by narrowing the issues in successive stages of the litigation, the law of the case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency).

Appellants also cite *In re Canales*, 52 S.W.3d 698, 701 (Tex. 2001). If an objection is timely, the assigned judge's disqualification is automatic. *Id.* When an assigned judge overrules a timely objection to his assignment, all of the judge's subsequent orders are void and the objecting party is entitled to mandamus relief. *Id.* We note, however, as argued by appellees, an objection to a judge assigned under chapter 74 is timely if it is filed before the very first hearing or trial in the case, including pretrial hearings, over which the assigned judge is to preside – without regard to the terms of the particular order under which the judge is assigned. *Id*. at 704. Once an assigned judge has heard any matter in a case, the parties have waived the right to object to that judge under section 74.053 of the government

5

code. *Id.* at 704. Judge Pate heard multiple matters dating from the time of his assignment in 1999 before objections to his assignment were belatedly filed in 2004. Accordingly, we agree that appellants waived their right to object to Judge Pate.

A trial court has plenary power over its judgment until it becomes final. *Mathes v. Kelton*, 569 S.W.2d 876, 878 (Tex. 1978); *Transamerican Leasing Co. v. Three Bears, Inc.*, 567 S.W.2d 799, 800 (Tex. 1978). The trial court also retains continuing control over interlocutory orders and has the power to set those orders aside any time before a final judgment is entered. *Texas Crushed Stone Co. v. Weeks*, 390 S.W.2d 846, 849 (Tex. Civ. App.–Austin 1965, writ ref'd n.r.e.). We therefore overrule appellants' issues one and three.

## II. Summary Judgment Complaints

### A. Standard of Review

A party may move for summary judgment under rule 166a(i) on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *W. Investments, Inc. v. Urena,* 162 S.W.3d 547, 557 (Tex. 2005); *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.–Austin 2002, no pet.). Unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact on the challenged elements, the court must grant the motion. TEX. R. CIV. P. 166a(i) & cmt.; *Urena*, 162 S.W.3d at 548; *Duvall*, 82 S.W.3d at 477-78.

In reviewing a no-evidence claim, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *Duvall*, 82 S.W.3d

6

at 478. If more than a scintilla of evidence exists, it is legally sufficient. *Goodman*, 80 S.W.3d at 577. Evidence is more than a scintilla when it rises to the level that would enable reasonable and fair-minded people to differ in their conclusions. *Duvall*, 82 S.W.3d at 478. But when evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Duvall*, 82 S.W.3d at 478.

Because the trial court's order does not specify the grounds for granting summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 217 (Tex. 2004). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed material fact issue that precludes summary judgment. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor. *Id.* at 549.

Summary judgment under rule 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). We review a summary judgment de novo. *Valence Operating Co. v.*

*Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).  A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if the evidence conclusively establishes all elements of an affirmative defense. *See Randall's*, 891 S.W.2d at 644. Where the trial court grants the judgment without specifying the grounds, we affirm the summary judgment if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

## B.  Application

We next determine if appellants offered some evidence on each of the elements of their malpractice and other claims against appellees under rule 166a(i).  TEX. R. CIV. P. 166a(i) .  Appellants were required to show proof that:  (1) appellees, as attorneys, owed a duty to appellants; (2) appellees breached that duty; (3) the breach proximately caused appellants' injuries; and (4) damages resulted.  *See Alexander v. Turtur & Assocs.,* 146 S.W.3d 113, 117 (Tex. 2004) (citing *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995)).

Appellees argue that appellants provided no evidence of causation of damages.  We agree.  Here, the alleged claims involved complex issues concerning the finality of the underlying class action case, appellate procedure, settlement, the effect of rule 42(c)(3), class opt outs, and other related issues.  Under these circumstances, expert testimony on proximate cause is clearly required because the issue is not one that lay persons are competent to determine. *Id.* at 120.  Further, the causal nexus between the event sued upon and a plaintiff's injuries is "strictly referable" to the damages portion of the plaintiff's cause

8

of action. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). Even if a defendant's liability has been established, proof of this causal nexus is necessary to ascertain the amount of damages to which the plaintiff is entitled. *Id.* This is true because the plaintiff is entitled to recover damages only for those injuries caused by the event made the basis of suit. *See id.*

Appellants take the position that their damages are the difference between settlement monies received by some dissident appellants, $5,500,[2] compared to the $20,000 received by about 22 other dissident plaintiffs, who held out two years longer on an appeal of the mandatory class recertification order.[3] Appellants did not point out to the trial court or to us any evidence, much less expert testimony, that OxyChem, the defendant in the underlying class action, would have separately settled individually, or as a group, for more than the class action structured amount. Nor do appellants point to any evidence that a prospective trial would have yielded appellants greater damages. To the contrary, the representative plaintiffs who actually tried their cases received far less monies than received under the class structure. A majority of the representative plaintiffs were awarded no damages in the twelve cases actually tried.

---

[2] The class settlement ranged from $500 to $5,500 each depending on whether or not, and when, the claimant received medical attention.

[3] Appellants somehow contend that they were *ipso facto* entitled to $14,500 additional damages, the amount received by another part of the dissident group. They ignore the fact that over 8,000 plaintiffs received $5,500 or less in settlements. Of those plaintiffs who actually went to the jury, seven recovered no damages, and five were found to have sustained total damages of $3,400 between the five plaintiffs. Thus, the average recovery per plaintiff in the underlying trial was $283.33. Had 80% of the dissidents not dropped their appeal, then there would have been no class settlement. Then neither dissidents nor non-dissident class members would have received any settlement from OxyChem. In that scenario, appellants' damage argument would require a conclusion that appellants were entitled to zero damages. This illustrates the speculative nature of appellants' argument. Furthermore, this speculative argument is not supported by any expert or even lay testimony. We also note that appellants largely rely upon argument rather than actual summary judgment proof.

9

In a response to a no-evidence ground for summary judgment, a nonmovant need not marshal her proof; however, her summary judgment response needs to point out evidence that raises a genuine issue of fact as to the challenged elements. *San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 330 (Tex. App.–Houston [14th Dist.] 2005, no pet.). The law is clear. If a nonmovant's response fails to set forth valid reasons why summary judgment should not be granted and if the motion and summary judgment evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on the grounds asserted in the motion, then the trial court should grant summary judgment. *Id.* at 329. Appellant provided no competent proof on the essential elements of causation and damages. TEX. R. CIV. P. 166a(i) . We therefore overrule those portions of appellants' issues here discussed.

## C. Breach of Fiduciary Duty

Appellants argue that they need not prove actual damages in order to recover against their attorneys for a breach of fiduciary duty. We agree. *See Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999) (concluding that a client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client). As a rule, a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust. *Id.* at 237. We then address whether or not appellants brought forth some evidence that appellees did in fact breach a fiduciary duty.

Appellants argue that appellees' employees undertook to advise dissident class members individually, and as a group, that they should drop their appeals of the order

10

recertifying the group as a mandatory class. Appellants claim that "[a]ppellees intended Appellants to believe that they would recover nothing from their pursuit of such appeal...." Appellants admit that no lawyers from appellees' firms were present when the dissidents were contacted. Appellants also contend that in some manner, appellees, as attorneys, "neither properly instructed nor supervised in what was said...."

Appellants further argue that appellees were "desperate" to get rid of the dissidents' appeals. They wanted all, or most all appellants to dismiss their appeals. To accomplish the dismissal of the dissidents' appeals, some of the law firms' investigators, videographers and legal secretaries were sent out to talk with appellants, with the permission of their own private attorney, Hector P. Gonzalez, who represented them on the appeal. When the employees went out, at least two of appellees' associate attorneys were available by phone to answer any inquiries by the dissidents.

Appellants point to the deposition testimony of one of appellees' attorneys, Steve Hastings. He testified that the lay persons only had authority to present the settlement distribution proposal to Gonzalez's clients. According to Hastings, "[w]e did not ask to discuss the relative merits of the appeal with these people." "We just said, 'Here's the settlement proposal. You can be treated like everybody else in this case. If you want the money, you'll need to dismiss your appeal.'" Hastings testified that the instructions to their firm personnel was to tell dissidents they had permission from Gonzalez to talk with them, present the settlement proposal, tell the plaintiffs the settlement category they fit in, and how much their portion of the settlement would be. The firm personnel did not advise them to drop their appeals as such. "If you would like to accept the settlement, the first step is we have to get 90 percent of the people to drop their appeals. Do you want to drop your

appeal?" If 80 or 90 percent did not drop their appeal, the settlement would fail and no one, including the dissidents, would receive any money from the class settlement.[4]

Hastings did not know if the firm's people advised the dissidents that they might get more money if they continued appealing, might get less, or might get no money. Hastings denied any conflict of interest as class counsel because Gonzalez represented the dissidents, and the firm secured his permission to talk with his clients. Hastings did not know if any of the dissidents were informed that if their appeal was lost, they still could have taken the class settlement. Alberto Huerta also testified the dissidents were told that if they needed information about their appeal, they needed to talk with Gonzalez, their attorney.

Arthur Meru, a legal assistant for Allison & Huerta, testified by deposition that he and others were dispatched to secure releases of all the people involved in the class action case against OxyChem. There were two forms: a release and a dismissal of appeal. All of the firm personnel sent out to obtain the releases were instructed to say the same thing. If the plaintiffs had any questions, they could call the attorneys on duty. The firm personnel could not answer a lot of questions because "I guess we were ignorant to what was going on with all the forms and stuff." Their job was to get the people to sign or no one was going to get any money.

Appellants insist appellees breached their duties to appellants by not adequately, fully and candidly disclosing all information pertinent to the circumstances involving the settlement and the potential value of their appeals, and instead convinced appellants by false and misleading statements to dismiss their appeals and settle their claims in the class settlement.

---

[4] This statement was factually and legally accurate as we understand the status of the class action settlement.

12

Appellants do not point to any proof of false or misleading statements.

Appellants judicially admit that they do not contend that appellees, as class counsel, were obligated to assist dissident class members to reach or maintain their dissident goals. Appellants conclude that the law is clear that fiduciary duties apply to class counsel as to members of the class. This is particularly true as to representation of class members in respect to settlement of their claims. See *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954-955 (Tex. 1996). We do not disagree. Once the parties enter into an attorney-client relationship, the attorney owes fiduciary duties to his client. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988).

It is an agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation. *Burrows,* 997 S.W.2d at 238. An agent's compensation is not only for specific results, but also for loyalty. *Id.* The main purpose of forfeiture is not to compensate an injured principal, even though it may have that effect. *Id.* Rather, the central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging an agent's disloyalty. *Id.* In addition to his position of trust and confidence with respect to his client, an attorney also has a legally imposed duty to disclose facts material to his representation. *McClung v. Johnson*, 620 S.W.2d 644, 647 (Tex. App.–Corpus Christi 1981, writ ref'd, n.r.e.) (citing *Rice v. Forestier*, 415 S.W.2d 711 (Tex. Civ. App. – San Antonio 1967, writ ref'd, n.r.e.).

Generally, conflicts of interest in class actions arise amidst concerns that class counsel has been tempted to further its own interest in securing exorbitant fees as against the interests of the class members. *See Bloyed*, 916 S.W.2d at 953. Clearly, class counsel

13

owes a fiduciary duty to protect the interests of absent class members. *Id.* However, no conflict of interest arises simply because different subclasses are designated as part of a settlement fund. *Farmers Ins. Exchange v. Leonard*, 125 S.W.3d 55, 65-66 (Tex. App.– Austin 2003, no pet.).

We reject appellants' arguments concerning a breach of fiduciary duty, for several reasons. First, the record shows that both appellees and their employees only had permission to discuss the merits of the class settlement. Appellees and their employees could not and did not discuss the merits of the dissidents' appeal. The class members, including the dissidents, had all been informed of the proposed class settlement. Attorney Gonzalez, as representative of the dissidents, spoke with his dissident clients and fully informed them of their rights to various settlement amounts within the class, as well as what they could expect on appeal. Gonzalez gave appellees permission to talk to his clients specifically about the class settlement itself, not about the particulars of the appeals options. The record reflects that appellees' employees were instructed not to respond if they were asked a legal question. Attorneys were available to answer legal questions of the class and the dissidents. The employees were given the documents "to be signed so that they would be opting in or dropping their appeal." The employees were given a limited script. "We don't want you to go outside of this because we want it to be uniform. Because they knew that if one person was told something different than the other, we'd get inundated with phone calls."

The record reflects no proof from any dissident or other source that he or she was given false or injurious information. Rather, we are left to speculate that some of appellees' employees may have misled or that they somehow failed to faithfully perform the very limited

14

task assigned to them by the law firms. Given the limited scope of their assignment and the equally limited scope of their permission to speak with the dissident plaintiffs, we find no evidence the firms' employees either exceeded their limited permission to speak or mislead the Gonzalez plaintiffs to whom they spoke. *See Ford Motor Co.*, 135 S.W.3d at 600. In short, appellees' employees did not possess the authority to discuss the relative merits of the dissidents' appeals. Nor is there any evidence appellees or their employees actually did so.

Secondly, appellants seek to narrowly focus only on the 1995 specific mission of certain employees of the law firms to obtain releases and dismissal of some of the appeals and some alleged isolated communications of several employees. Appellants ignore multiple informational meetings as well as court hearings that were needed to conclude and approve the class settlement.[5] The record demonstrates that attorneys were on call to answer any questions by any members of the class. Furthermore, there were extensive discussions of the settlement and its effect given by the class attorneys. Appellees set up special offices in Robstown to accommodate class members. Additionally, dissidents' counsel, Mr. Gonzalez, was present for at least one of the meetings at the High Chaparral to discuss not only the class settlement, but also the dissidents' appeal rights *vis a vis* the class settlement. Gonzalez spoke to his clients in Spanish. Some 128 of the dissidents then remaining in the appeal chose to accept the class settlement on that date and to dismiss their appeals.

---

[5] By analogy, appellants would argue that a patient could single out an isolated visit to her physician, one of many visits where a medical condition was discussed, and claim that the physician failed to fully apprise the patient of her condition at that visit, ignoring multiple other discussions covering the same subject matter. Perhaps even a better analogy to this case would be a patient who sees and discusses her symptoms with her doctor. Later, she has a conversation with a nurse, only to complain the nurse did not fully apprise the patient of her treatment options.

15

Members of the class, including dissidents, were shown videos, given brochures, and attended meetings with opportunities for questions and answers. Appellants ignore the totality of information given to the class and the dissidents.

Class counsel also provided a letter to class members which appellants mention, but either failed to include in the record or assign attention thereto by proper citation to the voluminous record. *See* TEX. R. APP. P. 38.1(f).[6]

Some 232 dissidents signed affidavits stating in much detail the information given to them concerning both the settlement and their dissident appeal. The 232 affidavits stated that the plaintiffs were informed there was a strong probability they would win their appeal but there was no guarantee they could get more money from the class or that they would get any money. Attorney Gonzalez advised them that he should be present during other settlement proceedings to protect their rights in the event the appeal was not successful. Gonzalez believed the distribution of funds by categories under the class settlement was fair. The affiants gave Gonzalez permission to support the disbursement of funds by category while at the same time prosecuting the appeal "so that my case does not have to fall within the mandatory class."

The trial court itself held fairness hearings under rule 42. *See* TEX. R. CIV. P. 42. It is true, as appellees agree, that the fiduciary relationship requires a full and fair disclosure of the terms of a proposed settlement. *Bloyed*, 916 S.W.2d at 951-952. Nevertheless, appellants do not point to any evidence to prove that a single dissident claims he or she did not receive adequate information and fair disclosure. To the contrary, the record reveals

---

[6] Many of appellants' citations to the clerk's record are erroneous. Appellants also cited both the trial court and this Court to multiple and entire depositions. *See* TEX. R. APP. P. 38.1(f).

16

considerable information was disseminated to the class. Rather than presenting summary judgment proof that appellees where somehow disloyal to or misled one or more dissidents, appellants choose to rely upon conjecture and weak circumstantial evidence. It is conjecture that "Appellees intended Appellants to believe that they would recover nothing from their pursuit of such appeal...."

Weak circumstantial evidence could possibly give rise to an inference that appellees, though their employees, undertook "to advise" dissident class members that they should drop their appeals of the order certifying the group as a mandatory class. However, when circumstances are consistent with either of two facts, and nothing shows that one is more probable than the other, neither fact can be inferred. *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex. 1984). Here, direct evidence reveals appellees employees were instructed not to advise any of the class members on the merits of the appeals. Appellees did not have permission to discuss the merits of their appeals. Finally, appellants offered no evidence that appellees as attorneys "neither properly instructed nor supervised in what was said..."

We disagree with appellants' attempts to focus on a singular contact by one of the law firms' employees as a basis to contend that appellees breached any fiduciary duties to appellants, particularly when they point to no evidence that any dissident actually gave up their appeal as a result of anything improper either appellees, or their employees, said or did not say.

Third, class counsel's primary obligation and duty was to the class itself. As appellants admit, it was not appellees' responsibility to represent the dissidents apart from their class representation. In fact, to represent the dissidents in connection with their appeal

would have created a conflict of interest between class counsel and the class itself. Class counsel owes no duty to promote a position inconsistent with the definition of the class or contrary to the law. *Bilodeau v. Webb*, 170 S.W.3d 904, 915-916 (Tex. App.–Corpus Christi 2005, pet. denied). "Logically, there is no breach of the fiduciary duty by class counsel where no duty is owed to act in the manner as contended and, indeed, where to so act would result in a breach of fiduciary duty." *Id.* A conflict of interest among clients may give rise to an attorney's duty to withdraw from a representation. *SMWNPF Holdings, Inc. v. Devore,* 165 F.3d 360, 365 (5th Cir. 1999). Absent consent, an attorney must discontinue employment if he is required to represent one or more clients who may have differing interests. *Id.* (citing *Baptist Memorial Hosp. Sys. v. Bashara*, 685 S.W.2d 352, 356 (Tex. Ct. App.– San Antonio,1984); *Lott v. Ayres*, 611 S.W.2d 473, 476 (Tex. Ct. App.– Dallas,1981)). Thus, had appellees actually undertaken to advise the dissidents concerning their appeal, appellees would have created a conflict of interest with the class as a whole.

The record shows that both class counsel and Mr. Gonzalez, though adversarial, took extraordinary steps to avoid a conflict of interest that would have disqualified class counsel after years of representation, including the underlying trial that gave rise to a favorable settlement.

The law is settled that an attorney is a special agent and all the doctrines of special agency must apply. *Greneaux v. Wheeler*, 6 Tex. 515 (Tex. 1851); *see also SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 364-65 (5th Cir. 1999) (citing *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 633 (Tex. Ct .App.– Amarillo,1983) (recognizing that an attorney is a "special" agent, whose power and authority is confined to "those powers necessary to the proper fulfillment of the duties cast upon him by such employment")). In

18

the context of this case, appellees' non-lawyer employees were in turn sub-agents of the law firms. As a special agent, an attorney's powers and authority are confined to those necessary to the proper fulfillment of the duties cast upon him by his employment. *See Heine v. Schendel*, 797 S.W.2d 278, 280 (Tex. App.–Corpus Christi 1990, writ denied) (citing *Hotel Longview v. Pittman*, 276 S.W.2d 915, 919 (Tex. Civ. App.–Texarkana 1955, writ ref'd n.r.e.)).

Fourth, a rule 42 hearing was conducted by the trial judge. He concluded that class counsel adequately and properly represented the class. The allegations now brought by some few dissidents are a collateral attack on the findings of the court. A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Ranger Ins. Co. v. Rogers,* 530 S.W.2d 162, 167 (Tex. Civ. App.–Austin 1975, writ ref'd n.r.e.). The grounds upon which a collateral attack may be successful are that the court rendering judgment has: (1) no jurisdiction of the person of a party, or his property, (2) no jurisdiction of the subject matter of the suit, (3) no jurisdiction to enter the particular judgment entered, or (4) no capacity to act as a court. *Id.* The Texas Supreme Court has reiterated this holding that a final judgment from a court of general jurisdiction is not subject to collateral attack in other courts of equal jurisdiction unless the first judgment is void. *Browning v. Placke*, 698 S.W.2d 362, 363, (Tex. 1985) (orig. proceeding) (citing *Austin Indep. School Dist. v. Sierra Club,* 495 S.W.2d 878, 881, (Tex. 1973)); *see also Fiallos v. Pagan-Lewis Motors, Inc.*, 147 S.W.3d 578, 586 (Tex. App.–Corpus Christi 2004, pet. denied; *Baze v. Marine Office of Am. Corp.*, 828 S.W.2d 152, 156 (Tex. App.–Corpus Christi 1992, no writ).

We recognize the potential for abuse of the class action procedure, which in turn,

underscores the importance of the trial court's obligation to determine that the protective requirements of Texas Rule of Civil Procedure 42 are met when the trial court approves a class action settlement. *Bloyed,* 916 S.W.2d at 954-55. Typically, the trial court plays a relatively detached role in most civil proceedings, but in a class action, the court is the guardian of the class interest. *Id.* (citing *Weinberger v. Kendrick,* 698 F.2d 61, 69 n.10 (2d Cir. 1982); *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 216, 223 (2d Cir.); *In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 225 (5th Cir. 1981); *Piambino v. Bailey,* 610 F.2d 1306, 1327 (5th Cir. 1980); 2 NEWBERG & CONTE, § 11.41, at 11-93 to 11-94.)) The trial court bears the burden under rule 42 to police the proceeding to minimize conflicts of interest and, primarily, to protect absent class members. *Id.* (citing *In re Gen. Motors Corp.,* 55 F.3d at 785 n.1).

On August 18, 1995, the trial court conducted a rule 42 hearing. The dissident class members were themselves separately represented by Mr. Gonzalez. At the hearing, dissident counsel requested that his objection to the hearing be overruled. He then departed the courtroom, having presented no witnesses or other evidence. The dissidents' objections were overruled as requested. The trial court ruled that all requirements of rule 42 had been met. The court found the settlement was fundamentally fair, adequate and reasonable, and protected the rights of the mandatory class. The class settlement was approved and all settled claims were dismissed with prejudice. The order approved the payment of attorneys' fee to appellees. The court reserved jurisdiction over implementing the settlement. The Order of Dismissal with prejudice was signed and entered September 12,1995. The dismissal also acknowledged that a judgment non obstante verdicto in favor of OxyChem would be entered in the underlying lawsuit tried against them.

20

It should be noted that the complained-of conduct by appellees' employees occurred before this time frame, earlier in the summer. No appeal was taken from this order. The only appeal was taken by appellants was to the conversation from an opt out class to a mandatory class. That order was signed and entered June 30, 1995.[7]

Finally, on May 5, 1997, the trial court entered an order entitled: "Final Order Concerning Class Members Who Have Been Paid." According to appellees, this included the "Gonzalez Plaintiffs," whom we have refereed to as "dissidents," a few of whom are appellants here. This final order states: "The obligations of the Class Representatives and Class Counsel to those Class Members identified in Exhibit "I", by reason of the creation and certification of this class action, have been satisfied and discharged." This judgment was likewise not appealed. Based upon both the 1995 Order of Dismissal and the 1997 final judgment, we must assume that the trial court exercised its role as guardian of the class not only in approving class settlements, but also in deciding whether to certify a class in the first place. *See Bloyed,* 916 S.W.2d at 954-55. This means that the trial court exercised its authority to assure that rule 42's certification requirements that class claims are common and typical of the entire class, and that the class representatives *and their counsel were adequate representatives. See id.*; *see also Browning,* 698 S.W.2d at 363.

Appellees also argue that collateral estoppel and res judicata bar appellants' current attempts to hold appellees responsible for alleged breaches of duty to the class. These are affirmative defenses upon which appellees have the burden of proof. Therefore, a "no evidence" motion for summary judgment is inappropriate. *See* TEX. R. CIV. P. 166a(i) .

---

[7] This appeal was dismissed. *See De Los Santos v. Occidental Chem. Corp.*, 953 S.W.2d 807, 808 (Tex. App.–Corpus Christi, 1997, no pet.).

21

Further, these matters were not raised with the trial court and therefore cannot be grounds for affirmance here.

In sum, the record shows judgments and final orders affirmatively finding that appellees satisfied and discharged their duties of representation as class counsel. In addition, hundreds of affidavits from the dissidents delineate extensive briefing of their rights by counsel. Appellants do not point to a single affidavit or other proof that any dissident-appellant was in fact impacted or was the victim of a breach of fiduciary duty. Neither the findings of the trial court nor the affidavits by many of the dissidents themselves were attacked so as to raise a fact issue. We conclude that the record is devoid of any evidence that appellees breached such duties. *See Ford Motor Co.*, 135 S.W.3d at 600.

Fee forfeiture or disgorgement is appropriate only where there is a breach of duty, a clear and serious violation of a duty to a client, that destroys or severely impairs the client-lawyer relationship. *Bilodeau v. Webb*, 170 S.W.3d 904, 915-16 (Tex. App.–Corpus Christi, 2005, pet denied) (citing *Burrow* 997 S.W.2d at 238). The record before us does not provide any evidence to support such a conclusion. Appellants' issue two is overruled.

III. Denial of Motion for New Trial

In their last issue, appellants complain of the denial of their motion for new trial. The motion itself almost exclusively addressed the appointment of Judge Pate. Appellants do not set out any other matters not already addressed above. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. *See Pharo v. Chambers County*, 922 S.W.2d 945, 947 (Tex. 1996). Because we have already addressed each of appellants' complaints that they reiterate in this issue and found no error, appellants' issue four is overruled.

22

The judgment of the trial court is affirmed.

      _____     DON WITTIG,
Justice

Memorandum opinion delivered and
filed this the 22nd day of May, 2008.